In the Matter of the Estate of J. HUNGERFORD SMITH, Deceased.

Surrogate's Court, Monroe County, March 30, 1933.

APPEAL from *pro forma* order fixing estate tax.

*L. M. Kellas*, for the executors.

*M. E. Gibbs*, for the State Tax Commission.

FEELY, S. When this testator died on April 19, 1932, there vested in his four children under his last will a right to legacies that are, in every sense of the word, contingent. The income from the main estate is to go to the widow for her life, thereupon to the four children until the daughter Helen reaches forty, or sooner dies — meantime issue of those dying are to succeed to the parental share — and at the end of Helen's period the principal and income of the then existing trust is to be divided among those of the four children " then surviving," but issue of those that theretofore died are to take the parental share.

This residue, however, is subject to payment of legacies given by name in the " sixth " paragraph to a sister, two brothers and a granddaughter, and is to include the legacy of any of those who die before becoming entitled to receive these gifts.

Both counsel agree, in this submission, that all these are contingent legacies. The only limitation, however, contained in the sixth paragraph, which is the principal expression of this gift to the collaterals and the granddaughter, is that these four legacies, totalling $14,000, are to be paid merely " upon the death of my said wife." Counsel, probably, consider that this ambiguity, as well as that surrounding the phrase, " become entitled to receive," is removed by the prior gift to the children of all the income, from and after the widow's death, and until the division is to take place at the end of Helen's period. No such ambiguity exists as regards the legacies to the four children, either of income or of principal.

On the theory that all these legacies, both to the children and to the collaterals above described, are contingent, as aforesaid, the State contends the executor cannot legally deduct from the net estate the amount of the exemption deductions specified in the statute for such legatees so related to the decedent; and this only because the interest such classified person may take is not only defeasible and contingent as to taking, but is also presently unascertainable as to amount. The executor argues that the statute makes no such distinction between interests that are vested and those that are contingent. This appeal is from the preliminary

order dated October 14, 1932, fixing the tax according to the State's view.

The difference shown in this issue corresponds to the change that has recently been made in the method of death taxation. The former Inheritance Tax Law took toll of the transfer in exact proportion to the benefit that each individual was enabled to receive, at any time, less certain deductions called " exemptions;" although strictly this term " exemption " applied to certain amounts that were left out of the computation, without impairing the principle that the individual's inheriting of the property, through the aid of the State, was fundamentally taxable. The wording of the old and the new statute is the same — that " the tax * * * shall not be payable with respect to * * * the amount * * * transferred to * * *." Obviously, one could not claim such " exemption " deduction if he was not going to be taxed at all. If he might possibly be taxed, then the general plan of the former law required a computation of the interest each one was legally enabled to take at any time; and if it were contingent, the State took security for ultmate payment of the tax, if and when the event happened.

The present Estate Tax Law, in order to avoid the complexities and deferments involved in this assurance feature of the former tax practice (See Report of Commission on Defects in Laws of Estates, 1930, p. 195), takes toll of the giving, rather than of the taking, and taxes the effected transfer presently, as a whole, without regard to contingent interests of individuals therein, but allows certain " exemption " deductions (Tax Law, § 249-q) in the same terms and classification of nearly related persons as did the former law, but now in larger amounts. Had the new law either somehow lumped the " exemption " deductions as it unified the basis of tax, or else had it embodied an expression similar to the United States Treasury Regulation that no merely contingent interest could claim any such exemption deduction, the present question might not have arisen. However, it is beyond doubt that the change in death taxation was mainly intended to abolish the practice of the State waiting to see whether, in the end, the individual would receive the legacy or not, and taking security against the outcome favoring the legatee. Now, in taxing the estate, rather than the individual beneficiary, and doing it presently and absolutely, it means nothing to the State whether or not the individual, in the end, actually receives the legacy; this death tax is limited to what passed indefeasibly at testator's death. The idea of tax and of exemption are correlative. If the State denies the executor an

exemption deduction on a merely contingent legacy, how can such legatee demand it from the executor?

In the instant appeal, on the authority of another *Smith Case* (143 Misc. 606), the contingent legatees require the executor to demand deduction of the exempted amount as regards them, on the ground that the contingent interest is no longer a basis of, nor a factor in the death taxation of this State. It is argued that the new statute is absolute in terms as to " exemptions " and does specifically differentiate against the merely contingent interests; and so, if the legatee, in the end, receives the money, the State will have had more tax than it would have had, and the legatee suffers; and as between the tax gatherer and the individual, the latter should be favored. The answer to this argument is that the State has definitely quit sitting out those future contingencies, and taking assurance against the outcome; but, instead, taxes the whole presently passing; and exempts accordingly; and that a claim of exemption must rest upon language in regard to which there can be no doubt as to meaning, and the exemption must be granted in terms too plain to be mistaken (*Matter of Stewart*, 131 N. Y. 274, 282); and the present statute having been designed to disregard the contingent future benefit that may or may not go to the individual legatees, and omits any express exemption of such legacies; the object being to enable both the State and the estate or executor to liquidate this tax matter presently and absolutely, on the basis of all that was passed indefeasibly at testator's death, its language must be read with that object in mind; and thus the statute falls short of the clarity which is prerequisite to a claim of exemption for what may never pass to the legatee on whose behalf the executor now demands a deduction. It cannot be that the former complexities and deferments are to be continued and merely transferred from the State to the executor; so that the executor must either protract his liquidation until the event shall actually have come to pass, or else he must privately assure himself now against such contingency, for the new law has discontinued any further public assurance of that kind. What the executor cannot legally demand from the State, in the first place, he cannot at any time be required to deliver over to the legatee.

Like consideration of the object sought to be accomplished by the enactment of the new law underlies the rulings that are contrary to the *Smith Case* (143 Misc. 606) upon which the appellants rely, namely, Surrogate FOLEY's ruling in *Matter of Bob* (N. Y. L. J. Aug. 13, 1932) and the decision of Surrogate WINGATE in *Matter of Mead* (145 Misc. 893). Surrogate FOLEY wrote that " The exemptions were to be allowed against such interests as were

vested or which might be regarded as almost certain to be vested." Surrogate WINGATE pointed out that the persons for whom exemptions are claimed in the notice of appeal may not receive a dollar under the will.

It is true that at testator's death the contingent legatee became the owner of a mere chance of gaining the legacy and coming into possession at some future date; but the case is not one of merely deferred possession of a certain right; nor is the case one in which that may be deemed certain which can be rendered certain. The limitation is so speculative in nature that there is no reliable data in existence by which its probability can now be measured with any practical certainty, or its present value expressed in a set sum of dollars and cents. In other words, it is no reasonable ground for a demand of present allowance of a definite amount of money.

In this connection there is some weight also in the suggestion that the State Estate Tax Law was intentionally made "as similar as possible" to the Federal act (See Report of Commission on Defects in Laws of Estates, 1930, p. 195); and that the interpretation of the Federal act has been along the lines followed by our metropolitan surrogates in the cases above mentioned. (*Ithaca Trust Co.* v. *United States,* 279 U. S. 151, 153, and *Humes* v. *United States,* 276 id. 487.) In the latter case the contingency the appellant sought to resolve was whether a "Texas girl of fifteen will not marry, or if she does, will die without issue before the age of thirty, or thirty-five, or forty." The court ruled that the attempt at calculating this was merely speculative; and even if the computation were part of the appeal record, no legal basis for the proposed deduction would thereby be laid. Writing for the court, Judge BRANDEIS said: "One may guess, or gamble on, or even insure against, any future event. The Solicitor General tells us that Lloyds of London will insure against having twins. But the fundamental question in the case at bar, is not whether this contingent interest can be insured against or its value guessed at, but what construction shall be given to a statute. Did Congress in providing for the determination of a net estate taxable, intend that a deduction should be made for a contingency, the actual value of which cannot be determined from any known data? Neither taxpayer, nor revenue officer — even if equipped with all the aid which actuarial art can supply — could do more than guess at the value of this contingency. It is clear that Congress did not intend that a deduction should be made for a contingent gift of that character." (*Humes* v. *United States,* 276 U. S. 487.)

"Algebraic formulæ are not lightly to be imputed to legislators." (*Edwards* v. *Slocum,* 264 U. S. 61, 63.)

By far the better opinion, therefore, appears to me to be that the counsel for the State Tax Commission is correct in his contention that the " exemption " deductions provided for by and under section 249-q of the Estate Tax Law are only those which can be made definite and certain as of the date of testator's death either by appraisal of the principal or fee interests then indefeasibly vesting, or by computation of similarly vesting interests in usufruct only, made according to the tables of mortality which the statute authorizes the State Superintendent of Insurance to use for such purpose.

Enter an order affirming the *pro forma* order herein dated October 14, 1932.