Love, J.
Allen B. Benson died on February 10,1947, a resident of Jefferson County, leaving a last will and testament which was duly admitted to probate on February 28,1947 and letters testamentary were issued to the Northern New York Trust Company, respondent.
An estate tax return was filed with the estate tax appraiser, showing the decedent’s gross estate consisted of United States bonds having a value of $3,203.09, which became payable to his widow on his . death and other property having a value of $55,120.28, that allowable deductions amounted to $3,662.05, leaving a net estate of $54,661.32. Of that amount $51,458.23 passed under the will.
There were two general legacies of $500 each to the widow and a sister of decedent, leaving a residuary estate of $50,458.23, which was placed in trust with the Northern New York Trust Company as trustee, income to be paid to the widow until her death or remarriage. The trustee was further empowered ‘ ‘ to use as much of the principal as shall be necessary for her comfort and support ” in the event that the income prove insufficient therefor.
Paragraph “ Sixth ” of the will provided that in case the trust continues until the widow’s death, whatever remained of the principal was to be divided into eight equal shares which are given to eight brothers and sisters of decedent, and in case the trust terminates by the remarriage of the widow, whatever remained of the principal was to be divided into nine equal shares, one to go to the widow and eight to the brothers and sisters of decedent.
The will further provided that if any of the remaindermen died before the termination of the trust, his descendants shall receive his share, or if he left no descendants, his share would be equally divided among the surviving remaindermen.
One brother predeceased the testator so that his rights with reference to the trust passed to his only child, a daughter, niece of the testator.
The value of an ordinary life estate for decedent’s widow, computed in accordance with section 249-v of the Tax Law, was shown to be $16,447, but the calculation was made without taking into consideration either the possibility of remarriage or the possibility of invasion of the principal.
*228 The appraiser’s report to the Surrogate allowed an exemption with respect to the widow for the full value of a life estate so computed, plus the value of the bonds and the general legacy of $500, totaling $20,150.09.
He further reported that an exemption of $4,251.41 was allowable with respect to each of the remaindermen for one eighth of the value which the remaindermen would have if preceded by an ordinary life estate, unaffected by remarriage or the power of invasion of the fund.
This did not take into account the possibility that the principal might be diminished or used up entirely through invasion . for the benefit of the widow or to the possibility that remainder-men might die before the widow’s death or remarriage or that they may take in the event of the widow’s remarriage.
The Surrogate of Jefferson County made a pro forma exemption order and fixed the amount of estate tax imposed upon the estate of Allen R. Benson, deceased, dated May 27, 1947.
In and by that order he determined and found the net value of the estate to be $54,661.32 and assessed no tax.
He allowed exemptions to the widow and remaindermen in accordance with the appraiser’s report which resulted in a determination that the transfer of decedent’s net estate was exempt from any estate tax under article 10-C of the Tax Law.
The State Tax Commission appealed from that order and appraisal of May 27, 1947, on the ground that personal exemptions are not allowable for bequests that are not indefensibly vested.
Upon the appeal the Surrogate made an order on March 16, 1948, affirming the pro forma order in allowing exemptions for each share passing to a brother or sister, in an amount equal to one eighth of the value the remainder would have if preceded by an ordinary life estate in the widow.
With respect to the widow’s interest in the residuary trust, his order allowed an exemption of $9,254, arrived at by disregarding the value of a life estate for the widow because her life use was “ conditioned on not remarrying ” and by adding to the value of her bonds and general legacy, one ninth of the full value of the residuary trust as of the date of decedent’s death — that is, the value she would have received had she married on the date of decedent’s death.
The order eliminated any exemption for the niece since she is not a person entitled to any exemption under the statute.
The Surrogate’s opinion states that he arrived at the exemption for the widow’s share of $9,254 by deducting from the net *229 taxable estate of $54,661.32, the amount of the jointly owned bonds and dividing the remainder by nine, the number of persons among whom the residue is divided in the event of the widow’s remarriage.
To this sum he added the value of the bonds and the general legacy.
He held that the amendment to section 249-q of the Tax Law, in 1946, did not deprive the brothers ’ and sisters ’ shares of the benefit of exemption and determined the exemption in each of their cases to be $4,251.50.
The State Tax Commission appealed from this order.
The relevant portion of section 249-q with the words added by the amendment of 1946 (L. 1946, ch. 380), italicized, provides as follows:
“ Any tax on amount of the net estate not in excess of one hundred fifty thousand dollars imposed by section two hundred forty-nine-n of this article shall not be payable with respect to
“ a. The amount of the net estate not exceeding twenty-thousand dollars transferred to and indefeasibly vested in a husband or wife;
‘ ‘ b. The amount of the net estate, not exceeding five thousand dollars in each instance, transferred to and indefeasibly vested in * * * a brother or sister * *
Here, the will transferred to the brothers and sisters of the testator, rights to share in a fund to consist of “ what remains ” upon the termination of the trust created for the benefit of his widow. That which would remain was undetermined and would be affected by the right to invade the principal to whatever extent might be necessary for the widow’s comfort and support, conceivably to the point of complete consumption.
Clearly, then, no amount of the estate was indefeasibly vested in the brothers and sisters so as to be exempted under section 249-q of the Tax Law.
Even before the words “ and indefeasibly vested ” were inserted in that section, it was held, in 1933, in Matter of Smith (147 Misc. 73) and by Surrogate Foley in Matter of Chollet (148 Misc. 782) that “ an exemption can only be allowed where the remainder interest is fixed and vested absolutely. Where such remainder interest is defeasible, contingent or conditional, the statute contemplates the denial of the exemption.”
There were similar holdings in cases up to 1937, in which year the question seems to have been under consideration by the Court of Appeals for the first time in Matter of Cregan (275 N. Y. 337).
*230 It was there decided that the Legislature had not spoken against an allowance of exemption for the transfer of estates in expectancy as well as estates in possession, that the Legislature did not indicate any intention to confine the exemption to transfers of expectant estates which are not dependent upon any contingency but that exemption must be allowed for the “ value ” of any- estate, whether in possession or expectant, when that “ value ” can be determined with reasonable certainty upon the basis of the known data and that the value of an expectant estate dependent only upon the contingency of. survivorship can be so determined.
Attempted application of this rule led to a large volume of litigation through use of the criterion of 11 reasonable certainty on the basis of known data ”.
In 1946, the amendment to the section under consideration eliminated the conflicts created in the decisions and provided for the allowance of an exemption only with respect to property indefensibly vested in a transferee.
The explanatory memorandum submitted to the Legislature at the time the measure was pending before it clearly states the legislative intent to bring about that result. (1946 New York State Legislative Annual, p. 303.) The words added have a clear and definite meaning.
With respect to the remainders of the brothers and sisters of the decedent we feel that they are not indefensibly vested but are defeasible in whole or in part by the power given to the trustee to invade the principal. (Matter of Dowling, 191 Misc. 818; Matter of Stubblefield, 191 Misc. 823; Matter of Faber, 191 Misc. 828; Rezzemini v. Brooks, 236 N. Y. 184.)
Further, the remainders of the brothers and sisters may not have an allowance of exemption because they are dependent upon survivorship and therefore not indefensibly vested. (Matter of Bostwick, 236 N. Y. 242; Matter of Van Cott, 194 Misc. 984.)
Lastly, the widow’s interest in the residuary is not indefensibly vested and therefore no exemption with respect to it can be allowed.
Her interest in the residuary trust has these aspects:
1. Her right to receive the income thereof until her death or remarriage.
2. The possibility that the trustee may exercise its conclusive discretion to invade the principal for her comfort and support, and
*231 3. Her contingent right, in case of her remarriage, to receive one ninth of whatever may then remain of the principal. (Matter of Lande, 241 App. Div. 138.)
The only interests which are indefeasibly vested are the general legacy of $500 to Emma Crowley, the general legacy of $500 and $3,203.09, the value of the United States bonds, which became payable to the widow upon decedent’s death.
The order of the Surrogate dated March 16, 1948, should be reversed and the matter should be remitted to the Surrogate of Jefferson County to enter an order in accordance herewith.
All concur. Present — Taylor, P. J., McCurn, Love, Vaughan and Piper, JJ.
Order reversed on the law, without costs of this appeal to either party and matter remitted to the Surrogate of Jefferson County for further proceeding in accordance with the opinion.