THE PEOPLE OF THE STATE OF NEW YORK ex rel. METROPOLITAN PLAYHOUSES, INC., Relator, *v.* MARK GRAVES and Others as and Constituting the State Tax Commission, Respondents.

Third Department, July 2, 1937.

*Weisman, Quinn, Allan & Spett* [*Milton C. Weisman, Samuel S. Allan* and *Edmund P. Silver* of counsel], for the relator.

*John J. Bennett, Jr., Attorney-General* [*Seth T. Cole, Special Assistant Attorney-General*, of counsel; *Harry T. O'Brien, Jr.*, with him on the brief], for the respondents.

HEFFERNAN, J. In this proceeding we are called upon to review a determination of the State Tax Commission which imposed a mortgage recording tax upon an instrument described in the record as a supplemental indenture executed and delivered by relator to Central Hanover Bank and Trust Company and Bayard W. Read, as trustees. Questions of law only are involved.

The pertinent facts are that in 1928 Fox Metropolitan Playhouses, Inc., a domestic corporation, was engaged in the operation of theatres upon its properties in this State and in the State of New Jersey. Shortly after its organization the company issued its six and a half per cent gold notes, dated as of May 1, 1929, which were convertible into six and a half per cent sinking fund gold debentures, in the principal sum of $13,000,000. As security for the payment of the notes and debentures the corporation executed and delivered to Central Hanover Bank and Trust Company and Frederic J. Fuller, as trustees, a mortgage, bearing the same date as the notes, covering the properties employed in the operation of its theatres, together with some shares of stock owned by it in subsidiary corporations. This mortgage was recorded in the office of the register of Kings county on June 12, 1929, at which time a mortgage recording tax in the sum of $57,362.50 was paid. Thereafter the mortgage was recorded in the various counties of this State and in the State of New Jersey, where the company's properties were situated.

In 1934 there was outstanding in notes and debentures an indebtedness of $12,460,700. The holders of these securities filed an involuntary petition against the company in the United States District Court for the Southern District of New York, pursuant to section 77B of the National Bankruptcy Act (U. S. Code, tit. 11, § 207) praying that the company be reorganized. The petition was

approved by the court and the company was reorganized pursuant to a plan of reorganization dated as of February 1, 1935. The plan in the main provided for the reorganization of the mortgaged assets of the company separately and apart from its unmortgaged assets, and was confirmed by the court on July 2, 1935. In the order of confirmation the court reserved to itself jurisdiction " to supervise and control the putting into effect and consummation of the Plan." In accordance with the provisions of the plan, and the order of the court directing its consummation, relator was incorporated under the laws of this State, and title to the property covered by the mortgage was transferred to it, subject, however, to the lien of such mortgage, which mortgage was modified by an order of the court directing that it should remain of record unsatisfied and undischarged as a continuing lien upon the various properties therein described for the original debt, reduced to $6,853,385. Upon the transfer to it of title to the properties described in the mortgage, relator assumed performance of all of the covenants and conditions of such mortgage as amended, modified, altered and reduced. As evidence of its assumption of the reduced indebtedness, relator issued its five per cent debentures in the aggregate sum of $6,853,385 in exchange for the old notes and debentures of Fox Metropolitan Playhouses, Inc. The instrument by which title to the properties was transferred, the mortgaged indebtedness reduced, the mortgage altered and amended, and the debt assumed as so reduced is the so-called supplemental indenture. This instrument was offered for record in the office of the register of New York county and was recorded by that official without the payment of a mortgage tax. Thereafter the State Tax Commission reviewed the action of the recording officer and determined that the instrument was subject to the mortgage recording tax.

Relator contends that the supplemental indenture is not a mortgage within the purview of sections 250 and 253 of article 11 of the Tax Law.

A mortgage is defined as an instrument which " Imposes a lien on or affects the title to real property, notwithstanding that such property may form a part of the security for the debt or debts secured thereby." (Tax Law, § 250.) By the provisions of section 253 of the Tax Law such an instrument is subject to a recording tax. This court, speaking through Mr. Justice DAVIS, said in *People ex rel. N. Y. T. & M. Co.* v. *State Tax Commission* (220 App. Div. 396; affd., 245 N. Y. 603): " The tax is imposed not upon the debt itself but upon the written evidence of collateral security required to be recorded. The debt is merely the

basis for computation of the tax." Certain exceptions are made by section 255 which, so far as material here, provides: " If subsequent to the recording of a mortgage on which all taxes, if any, accrued under this article have been paid, a supplemental instrument or mortgage is recorded for the purpose of correcting or perfecting any recorded mortgage, or pursuant to some provision or covenant therein, or an additional mortgage is recorded imposing the lien thereof upon property not originally covered by or not described in such recorded primary mortgage for the purpose of securing the principal indebtedness which is or under any contingency may be secured by such recorded primary mortgage, such additional instrument or mortgage shall not be subject to taxation under this article, unless it creates or secures a new or further indebtedness or obligation other than the principal indebtedness or obligation secured by or which under any contingency may be secured by the recorded primary mortgage."

In considering the contentions of the parties it should be kept in mind that the supplemental indenture was conceived solely as a result of the reorganization of Fox Metropolitan Playhouses, Inc., accomplished under the aegis of the Federal statute. The incorporation of relator, the execution and delivery of the supplemental indenture and the issuance of its debentures were merely the mechanics of the plan of reorganization under section 77B of the Bankruptcy Act. That section declares what a plan of reorganization shall include, and states that: " A plan of reorganization within the meaning of this section (1) shall include provisions modifying or altering the rights of creditors generally, or of any class of them, secured or unsecured, either through the issuance of new securities of any character or otherwise; * * * (9) shall provide adequate means for the execution of the plan, which may include the transfer of all or any part of the property of the debtor to another corporation or to other corporations * * * modification of liens, indentures, or other similar instruments, the curing or waiver of defaults, extension of maturity dates of outstanding securities, the change in interest rates and other terms of such securities * * * and the issuance of securities of either the debtor or any such corporation or corporations, for cash, or in exchange for existing securities."

In compliance with the requirements of that section the plan in article V provided that:

" Upon the consummation of the Plan, Noteholders will receive on the basis of each $1,000. principal amount of notes, together with all accumulated and unpaid interest:

" (a) $200. in cash;

" (b) $550. principal amount of New Debentures due 1945 of the New Company;

" (c) Four shares of Class B stock, each entitling the holder to receive a maximum of $62.50 per share with simple interest at the rate of 5 per cent per annum from February 1, 1935, out of any dividends paid by the New Company on the Class B stock."

Article IX of the plan provides that:

" The New Debentures will constitute a closed issue and will be secured by a new mortgage or by the existing mortgage (hereinafter called the ' Indenture ') amended and modified so as to contain such terms and provisions as the Committee and proponent may determine upon, and subject to the approval of the court as to all matters of form and substance   *   *   *.

." It is contemplated that the Indenture will continue substantially in its present form, but the Indenture may be amended and modified in any respect without constituting a material and adverse amendment to the Plan, provided such deviations are approved by the Court or the Judge and are not inconsistent with the specific provisions of the Plan.   The Indenture will continue to be a lien upon the assets now pledged or mortgaged thereunder, including the New Company's interest in the operating companies."

The order of the court, dated August 26, 1935, directing the " carrying out of the plan," sanctioned the quoted provisions.

It is quite significant that neither in the plan, the order approving the same, the order directing that it be consummated, nor in the supplemental indenture itself is there anything to support the claim of respondents that a new lien was created.   On the contrary, it conclusively appears that the supplemental indenture was executed and delivered to amend, alter and reduce the original mortgage.   What happened was that the mortgaged property was transferred to relator on its assumption of the notes and debentures secured by the mortgage.   The contention of respondents that there was a new mortgage by a new corporation is highly technical.   Tax laws are to be liberally construed in favor of the taxpayer.   The written evidence of the collateral security for the original debt has already been taxed.   The supplemental indenture did not increase the debt described in the mortgage. No new debt or obligation arose.   The original mortgage is still unsatisfied.   Certainly no tax would be due if the assets were revested in the debtor, as might have been done.   The issuance by relator of new debentures is simply its promise to pay the indebtedness it assumed.   These debentures did not destroy the lien created by the original mortgage; neither did they create a new lien or a new debt.   The supplemental indenture creates no new lien, and consequently is not subject to a tax.

Even if the supplemental indenture may be regarded as a mortgage, which we do not concede, then it would be exempt from taxation under section 255 of the Tax Law as a supplemental mortgage. Counsel for respondents contends that section 255 does not aid relator, and in support of his argument he is relying on *People ex rel. Williamsburgh Savings Bank* v. *State Tax Commission* (245 N. Y. 414). That case is not in point. The original mortgage in that case contained the following provision: " It is expressly understood and agreed that the party of the second part, its successors or assigns, if it so elects, may replace this mortgage by twelve permanent mortgages, each to cover a portion of the hereinbefore described premises, and which twelve mortgages shall be given as security for a sum aggregating the amount of the principal sum secured hereby."

Thereafter the grantee of the original mortgagor executed twelve separate mortgages, each covering a portion of the same property. The question for determination was whether one of the new mortgages was subject to taxation. It is particularly to be noted that the lien of the original mortgage had been satisfied of record and destroyed and a new lien was created by a new obligor, thus establishing a new transaction. Evidently that was the determining factor in the case because the court said: " Here we have a new obligation, *i. e.*, the mortgage of the grantee of the mortgaged premises. The mortgage is clearly taxable. One lien has been satisfied of record and destroyed. Another debtor has created another lien in its place. There is a new transaction with a new tax."

In the case before us a tax has been computed and paid upon the basis of an indebtedness of $13,000,000. That mortgage continues as the evidence of the collateral security for the same debt now reduced to $6,853,385. The supplemental indenture, stripped of all non-essentials, is an instrument collateral to the original mortgage, and is consequently immune from taxation under section 255 of the Tax Law. (*People ex rel. Banner Land Co.* v. *State Tax Commission*, 244 N. Y. 159.)

The plan itself refutes the argument that relator is a new debtor or that a new obligation was created. Article XVII of that document reads: " It is contemplated that the plan will be carried out under the provisions of section 77B of the Bankruptcy Act by the transfer of all assets to a new corporation to be organized for that purpose or by revesting the assets in the debtor. The corporation so acquiring the assets of the debtor is herein referred to as the ' New Company ' and in the event that the plan shall be consummated by revesting the assets in the Debtor, the term ' New Com-

pany' shall in all instances be deemed to refer to the Debtor. The New Company will create and issue the new securities and execute the appropriate agreements and indentures necessary to carry out the Plan, although it is contemplated, if practicable, that the existing indenture be utilized with appropriate amendments."

Finally we are convinced that section 252 of the Tax Law, as amended by chapter 373 of the Laws of 1936, exempts the supplemental indenture from the payment of the tax imposed upon mortgages. That amendment grants an exemption to all mortgages executed subsequently to June 7, 1934, and which are substituted for other mortgages as part of and in compliance with a plan of reorganization pursuant to section 77B of the Bankruptcy Act. So far as material here the amendment provides: " that mortgages of real property situated within this State which are executed, given or made subsequent to June seventh, nineteen hundred thirty-four and which are substituted for other mortgages as a part of and in compliance with a plan of reorganization pursuant to the provisions of section seventy-seven-b of the Federal Bankruptcy Act, are and shall be exempt from taxes imposed by this article to an amount not exceeding the amount of such mortgage indebtedness outstanding at the time of the consummation of such reorganization, and any person or corporation owning any debt or obligation secured by such a mortgage of real property situated within this State is and shall be exempt from the taxes imposed by this article."

It is highly significant that the Legislature, in framing this amendment, inserted therein the date of June 7, 1934, which is the identical date when section 77B of the Bankruptcy Act was enacted. Clearly that date was inserted for the express purpose of fixing the time from which the amendment should be effective. The instrument involved here comes squarely within the legislative exemption.

The determination should be annulled, with fifty dollars costs and disbursements.

HILL, P. J., and BLISS, J., concur; RHODES, J., dissents, with a memorandum, in which CRAPSER, J., concurs.

RHODES, J. (dissenting). The original debentures secured by the original mortgage have been exchanged for new debentures secured by another mortgage, which is the mortgage in question. The holders of the original debentures exchanged them for the new debentures of a third party, a new corporation. Certainly new elements of consideration entered into the making and delivery of the new debentures. It seems to me that the transaction con-

stituted a novation, and thus the mortgage in question given to secure the new debentures was a new mortgage and not exempt under section 255 of the Tax Law. (*People ex rel. Williamsburgh Savings Bank* v. *State Tax Commission,* 245 N. Y. 414.)

Moreover, the exemption of section 252 of the Tax Law relative to mortgages given as part of reorganization under section 77B of the Bankruptcy Act does not seem to apply. The said amendment became effective May 1, 1936. Probably no one would contend that a mortgage tax paid on such a mortgage before the amendment became operative could be refunded; in fact, under the Constitution, the Legislature would have no authority to authorize such a refund of moneys lawfully paid into the treasury.

In this case the only difference is that the tax was not paid, though the mortgage was recorded and the Commission had assessed the tax prior to the taking effect of the amendment; thus the tax had become a fixed liability before the amendment became operative.

The determination should be confirmed.

CRAPSER, J., concurs.

Determination annulled, with fifty dollars costs and disbursements.