In the Matter of the Application of GRAMOTT CORPORATION, Petitioner, against MARK GRAVES and Others, Constituting the State Tax Commission, Defendants.

Third Department, November 2, 1938.

*Miller, Owen, Otis & Bailly* [*S. Weldon O'Brien* and *Francis B. Delehanty, Jr.,* of counsel], for the petitioner.

*John J. Bennett, Jr., Attorney-General,* and *Henry Epstein, Solicitor-General* [*Edward J. Gretchen, Assistant Attorney-General,* of counsel], for the defendants.

BLISS, J.   On May 1, 1935, the Gramott Corporation executed and delivered to the Continental Bank and Trust Company of New York, trustee, a real estate mortgage which was recorded in New York county register's office on August 5, 1935.   A mortgage recording tax of $3,555 was paid thereon to the recording officer. This mortgage was a substitution for another mortgage as a part of and in compliance with a plan of reorganization pursuant to the provisions of section 77B of the Federal Bankruptcy Act. Section 253 of the Tax Law as it then existed imposed the tax. On May 1, 1936, section 252 of the Tax Law was amended so as to

provide that mortgages such as this one " are and shall be exempt from taxes imposed by this article." Thereafter, pursuant to section 263 of the Tax Law, the petitioner, Gramott Corporation, applied to the State Tax Commission for an order directing the recording officer to refund the tax upon the ground that it had been " erroneously collected." Thus we have a tax which was in every respect valid and paid without protest, but which the taxpayer now seeks to have refunded as having been " erroneously collected " because the statute was later amended so as to exempt this class of mortgages from taxation. In support of this contention the taxpayer urges that the amendment made by chapter 373 of the Laws of 1936 to section 252 of the Tax Law is retroactive to June 7, 1934. The statute itself speaks only of the present and the future. The words " are " and " shall be " are in the present and future tenses. It indicates no retroactive effect and no disposition on the part of the State to refund taxes already paid. Had the Legislature entertained any such purposes it could very easily have said so.

Statutes dealing with matters of substance are not to be construed as retroactive unless such an intent clearly appears. (*Addiss* v. *Selig*, 264 N. Y. 274.) Even the broadest construction of the words " erroneously collected " would not entitle this taxpayer to a refund of this tax which was perfectly valid when collected. The statute makes no provision for the refund of recording taxes previously collected on this class of mortgages and it must be assumed that the Legislature knew full well that many such a tax had been collected by the State. " The tax became due and payable when the mortgage was recorded. The statute does not provide for a refund when the mortgage is canceled. Under such conditions, even if we give the broadest construction to the words ' erroneously collected,' no refund can be made." (HILL, J., in *Fox Lane Corporation* v. *Loughman*, 225 App. Div. 417.) That the Legislature has now seen fit to exempt these mortgages from the payment of a recording tax is no authority for holding that a valid and legal tax was erroneously collected. Such construction of a statute, which is perfectly clear and plain on its face, would lead to endless confusion and great loss to the State whenever a taxing statute was repealed. This tax was not " erroneously collected."

*People ex rel. Metropolitan Playhouses, Inc.,* v. *Graves* (251 App. Div. 655; affd., 275 N. Y. 621) is not decisive here. In that case the tax was not paid before the effective date of the statute which exempted the mortgage from taxation and never was paid. The determination of the State Tax Commission should be confirmed, with fifty dollars costs and disbursements.

RHODES and CRAPSER, JJ., concur; HEFFERNAN, J., dissents with an opinion, in which HILL, P. J., concurs.

HEFFERNAN, J. (dissenting). This is a certiorari proceeding to review a determination of the State Tax Commission confirming and ratifying the action of the register of New York county in imposing a mortgage recording tax upon a certain instrument executed by petitioner to The Continental Bank and Trust Company of New York as trustee, and denying an application for a refund of such tax. There are no issues of fact and questions of law only are involved.

On October 1, 1926, Rosman Construction Corporation executed to Herbert S. Martin, as trustee, a mortgage upon certain real property situated in New York county, to secure the payment of an issue of six per cent bonds in the principal sum of $750,000. Thereafter the Rosman Construction Corporation defaulted in the payment of principal and interest due. On October 25, 1934, petitioner, which meanwhile had acquired title to the property upon assumption of the obligation of the mortgagor, filed its petition for reorganization under section 77B of the National Bankruptcy Act in the United States District Court for the Southern District of New York. On June 12, 1935, the District Court made an order confirming a plan of reorganization proposed in the bankruptcy proceedings. At that time the bond issue had been reduced in principal amount to the sum of $711,000.

In substance the plan contemplated the confirmation of title in the petitioner, which was to issue its income bonds in equal face amount in exchange for those outstanding under the 1926 mortgage. A large majority of the petitioner's authorized stock was also to be issued to the bondholders in proportion to their holdings, and it was to execute a new mortgage securing the issue of income bonds. The form of this new mortgage was delimited and approved by the order of confirmation, which also directed the delivery of the old bonds to the trustee in exchange for the new securities.

Pursuant to such order and by instrument dated as of May 1, 1935, but actually executed on June thirtieth of that year, the petitioner made a new mortgage in the sum of $711,000, covering the same property described in the mortgage executed by the Rosman Construction Corporation in its agreement of October 1, 1926. This mortgage was recorded on August 5, 1935, in the office of the register of New York county, at which time a tax under section 253 of the Tax Law, in the amount of $3,555, was demanded and paid.

On May 1, 1936, section 252 of the Tax Law was amended (Laws of 1936, chap. 373, § 1) to read in part as follows: "mortgages of real property situated within this State which are executed, given or made subsequent to June seventh, nineteen hundred thirty-four and which are substituted for other mortgages as a part of and in compliance with a plan of reorganization pursuant to the provisions of section seventy-seven-b of the Federal Bankruptcy Act, are and shall be exempt from taxes imposed by this article to an amount not exceeding the amount of such mortgage indebtedness outstanding at the time of the consummation of such reorganization, and any person or corporation owning any debt or obligation secured by such a mortgage of real property situated within this State is and shall be exempt from the taxes imposed by this article."

After the enactment of this amendment, which became effective May 1, 1936, the petitioner, on May 16, 1936, applied for a refund of the recording tax. The application was denied. The validity or invalidity of that determination is the question presented.

Petitioner contends that the amendment is retroactive in operation and exempts the mortgage involved from payment of the tax. Defendants assert that when the Legislature adopted the amendment it did not thereby intend to affect taxes paid prior thereto.

The amendment grants an exemption to all mortgages executed subsequently to June 7, 1934 (the date of enactment of section 77B of the Federal Bankruptcy Act), and which are substituted for other mortgages as a part of and in compliance with a plan of reorganization under that act. The choice of language in the amendment is significant. It provides that such "mortgages * * * *are and shall be exempt* * * * and any person or corporation owning any debt or obligation secured by such a mortgage * * * *is and shall be exempt*" from the tax. Section 252-a and other portions of section 252 use no such phraseology. They express only futurity by the adoption of the words "shall be exempt" or "shall not be subject to the payment of the taxes."

The statutory language is unambiguous. From it clearly appears the legislative intent to extend the exemption to all mortgages of the described type made and executed after June 7, 1934, regardless of when recorded. When the language of a statute is unambiguous the courts will refuse to inquire into extraneous matter to create an ambiguity and thus provide a question for construction. When the language of a statute is clear it is the duty of the court to give effect to that language and not to speculate upon the supposed intent for the purpose of giving it a different meaning. (*People* v. *Long Island Railroad Co.*, 194 N. Y. 130; *Gillespie* v. *Zittlosen*, 60 id. 449; *Helvering* v. *New York Trust Co.*, 292 U. S. 455.)

It is evident from the amendment that the date, June 7, 1934, was not inserted for the purpose of clarifying the balance of the statute. If anything, it is clear that it was included for the purpose of making the amendment retroactive to June 7, 1934. If that is not so, then there was no necessity to specify the date. The amendment would be clear without it. In a similar case (*People ex rel. Metropolitan Playhouses, Inc.*, v. *Graves*, 251 App. Div. 655; affd., 275 N. Y. 621) this court recently held that section 252, as amended, applied to all section 77B mortgages made since June 7, 1934, even if recorded prior to the date of the enactment of the amendment.

A consideration of the history of sections 252 and 252-a will tend to shed much light upon the intention of the Legislature in enacting the amendment to section 252. As was said by the court in *Matter of Hamlin* (226 N. Y. 407): " As bearing upon the intention of the Legislature of this State in the enactment of a statute, we may consider such historical or other facts as are reasonably within the scope of judicial cognizance."

Section 252, as originally enacted, made provision for no exemption. It was derived from section 292 of chapter 908 of the Laws of 1896 (as added by Laws of 1905, chap. 729, and renumbered and amended by Laws of 1906, chap. 532) and continued in such form until 1933, when mortgages held by the Home Owners Loan Corporation or Federal land or home loan banks were granted an exemption. This was the genesis of much beneficent legislation designed to mitigate the severity of the depression and its attendant disruption of real estate values and of the real estate market.

The next manifestation of legislative concern followed in April of 1934, when section 252-a was enacted. This section granted an exemption to mortgages arising out of the newly-enacted Schackno and Burchill legislation. The following month saw the enactment of legislation unrelated to problems arising out of reorganization, but pertinent nevertheless to our problem of construction. Section 252 was amended to provide an exemption for mortgages made by public benefit corporations engaged in operating or maintaining public parks. This amendment, effective May 9, 1934, applied only to those mortgages executed prior to June 1, 1934. It is reasonable to suppose that such provision was intended to be retroactive; otherwise it would have application to a period of merely twenty-three days, to wit, from May 9 to June 1, 1934. If this be true, then we are afforded some intimation as to why the amendment here involved was incorporated in section 252 rather than in 252-a where no provisions for retroactivity are to be found.

It will be seen, then, that mortgages arising out of State reorganizations, and the holders of the obligations secured by them, were exempt from taxation as early as April 27, 1934. In June of 1934 the Federal Bankruptcy· Act was amended by the insertion of a new reorganization section commonly known as section 77B. This legislation provided a more comprehensive means for effecting reorganizations than was available under State supervision or the equity receivership. The stringent provisions for binding recalcitrant minorities, the inclusion of provisions allowing process to run throughout the United States, and the elimination of the necessity for the ancillary receiver, made it an attractive vehicle for embarrassed corporate debtors.

The Legislature has power to cure retrospectively defective or irregular proceedings to levy, assess or collect taxes, providing no injustice be inflicted thereby and to exempt certain classes of property from taxation even retrospectively. (*People ex rel. A. B. Society* v. *Commissioners*, 142 N. Y. 348; *People ex rel. Eckerson* v. *Board of Education*, 126 App. Div. 414; affd., 193 N. Y. 601; *People ex rel. Clark* v. *Gilchrist*, 243 id. 173.)

When the Legislature clearly indicates that it intends a statute to operate retroactively, it must, of course, be so construed. (*People ex rel. Huntington* v. *Crennan*, 141 N. Y. 239.) This rule is peculiarly applicable when the statute involved is remedial in nature as a statute remitting taxes necessarily is. (*People ex rel. Pells* v. *Supervisors of Ulster County*, 65 N. Y. 300; *Brower* v. *Bowers*, 1 Abb. Ct. App. Dec. 214; *People ex rel. Collins* v. *Spicer*, 99 N. Y. 225.) That tax laws in general are to be liberally construed in favor of the taxpayer is too well settled to warrant the citation of precedents.

Under the provisions of the Tax Law the mortgage tax is one imposed upon the mortgage itself and not upon the debt. The debt is merely the measure of the tax. (*People ex rel. N. Y. T. & M. Co.* v. *State Tax Commission*, 220 App. Div. 396; affd., 245 N. Y. 603; *People ex rel. Metropolitan Playhouses, Inc.,* v. *Graves, supra.*) The time of recordation is not material. The statute does not make it the duty of the mortgagee to record the mortgage forthwith, or provide that his failure to do so and to pay the tax shall render the mortgage void. The mortgage may be recorded and the tax paid at any time before the mortgagee seeks to enforce it. (*Mutual Life Insurance Co.* v. *Nicholas*, 144 App. Div. 95.) Convinced as we are that the amendment in question is retroactive, we cannot attribute to the Legislature an intent to penalize mortgagors or mortgagees who had paid the tax within the effective period of the amendment but prior to its .enactment, and at the

same time to absolve from payment persons who had executed mortgages during the effective period and had omitted to record the same, or those whose instruments were recorded and from whom through inadvertence or otherwise no tax had been exacted. The decision of this court in *People ex rel. American & F. M. Ins. Co. v. Sohmer* (163 App. Div. 778; affd., 213 N. Y. 658) is authority against so inequitable a construction of the statute. In that case the relator paid a franchise tax already due on March 29, 1913, although the tax need not have been paid until June first of that year. The amount paid was that required by the laws then in effect. On April 24, 1913, section 190 of the Tax Law was amended to increase the amount of credit to which the relator and other insurance companies were entitled and thus reduced the amount of tax due. The language of the amendment contemplated only future transactions; no provision was made for instances in which the tax was already paid. Since the tax paid by the relator was not in excess of what could lawfully have been demanded from it at the time the tax was paid, the Comptroller refused a readjustment upon the ground that such relief could be given under section 198 of the Tax Law only where the tax included charges " which could not have been lawfully demanded " by him at the time of payment.

In overruling this contention and directing a remission of the tax upon the ground that under the circumstances the expression " lawfully demanded " as used in section 198 should be liberally construed, this court said: " We believe this strict construction of section 198 to be narrow, unwarranted and repugnant to justice and equality. The purpose of the section is to empower the Comptroller to grant relief where relief ought to be granted. If the State has obtained money from the taxpayer which it ought to give back, under section 198 the Comptroller must revise his books and accounts to the effect that the money may be returned to the rightful owner. No strict reading of the section or technical construction of it should defeat this plain purpose of the law. The Comptroller recognizes that had the relator delayed the payment of its tax until after April twenty-fourth it would have been entitled to the $1,000 credit. But, under the amendment, this credit is to be given irrespective of whether payment of the tax has been made. Payment of the tax forms no obstacle to the credit. Because, by chance, the relator paid its tax promptly, that in no manner affects its rights under section 190 as amended. Surely the law will not permit the relator to be punished for its promptness and diligence. More than twenty companies entitled to credit just as the relator was, but no more so — companies slothful in

the payment of their taxes — have been allowed these credits. Must the law be so construed as to allow these companies to profit by their sluggishness while the relator for its promptitude must suffer loss? If the tardy companies were entitled to the credit provided for by the amendment to section 190, so also were the prompt companies. The Comptroller should have acted upon this principle, for no canon of construction requires a statute to be so read as to work out inequality or injustice. After hearing an appeal this court is empowered to do, not only what ought to have been done, but what ought to be done, in order to effect exact justice." This authority apparently is decisive of the issue now before us.

Defendants urge that because there is no provision made for refunds to those who have already paid taxes on recorded section 77B mortgages that clearly indicates a legislative intent that the amendment was not to apply to past transactions; that such a provision, if made, would be unconstitutional.

A provision for refund is neither required nor necessary to render the statute constitutional as section 263 of the Tax Law sufficiently empowers the Tax Commission to refund mortgage taxes erroneously collected. A similar section relating to income tax refunds, to wit, section 382 of the Tax Law, was held sufficient to empower the Tax Commission to make refunds where a retroactive exemption statute made no provision for any refunds. (*People ex rel. Clark* v. *Gilchrist*, 243 N. Y. 173.) In that case the court in discussing the constitutionality of the amendment even though there was an absence of a refunding provision said: " A point is made that the act of 1926 goes counter to article III, section 21, of the Constitution of the State. By that section, ' no money shall ever be paid out of the treasury of this State or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law.' The question is not here whether in default of adequate appropriation, the reaudit will be effective to give the appellant back his money. In point of fact, a fund is established by section 382 of the Tax Law for the repayment of taxes erroneously collected (cf. § 373, subd. 3, as amended by L. 1926, ch. 329). The result would be the same, however, though present appropriation were lacking altogether. Appropriation, if necessary, may be afterwards supplied."

It is to be noted that sections 382 and 373 (Subd. 3) of the Tax Law, relating to refunds of income taxes, have their direct counterpart in section 263 of the Tax Law relating to refunds of the taxes on mortgages.

Defendants also contend that the amendment must be strictly construed in view of the inhibition contained in article 8, section 9, of the State Constitution. That section, prohibiting, as it does, gifts of State money to any association, corporation or private undertaking, is obviously designed to prevent arbitrary or corrupt uses of public money. It is not intended to prohibit readjustments of public revenue in the interests of equity and justice.

In *People ex rel. Eckerson* v. *Board of Education* (*supra*) the statute before the court authorized the refund of excessive school taxes. It was there held that the statute should be construed retroactively and that such interpretation was not obnoxious to the constitutional prohibition. The power of the Legislature to readjust the public revenues retroactively for the purpose of relieving hardships is not a debatable question. (*Matter of Pardee* v. *Rayfield*, 192 App. Div. 5; affd., 230 N. Y. 543.) Upon the face of the statute the exemption is applicable regardless of whether or not payment of the tax has been made. Any refunds made under the statute will go to a whole class, and not to particular individuals or groups singled out for arbitrary favor. As was said by the Court of Appeals in *People ex rel. Clark* v. *Gilchrist* (*supra*): " This is not a statute relieving the taxpayer of an undisputed burden as a mere largess or gratuity. If such were its quality, there would be need to consider whether remission of a tax already paid would be subject to condemnation as a gift of public moneys. (*Loan Assn.* v. *Topeka*, 20 Wall. 655; *Lewis* v. *State*, 197 App. Div. 712; 234 N. Y. 587.) This is not a gift at all, but a readjustment of the public revenues for the promotion of a public purpose."

The determination should be annulled, with fifty dollars costs and disbursements, and a refund of the tax paid directed.

HILL, P. J., concurs.

Determination confirmed, with fifty dollars costs and disbursements.