TOWN OF INLET, N. Y., et al. v. NEW YORK CENT. R. CO. et al. (INTERSTATE COMMERCE COMMISSION, Intervener).

No. B-12372.

District Court, N. D. New York.

July 13, 1934.

J. Theodore Cross, of Utica, N. Y., for plaintiffs, other than Public Service Comm'rs of State of New York.

John T. Ryan, of Delmar, N. Y. (Charles G. Blakeslee, of Binghamton, N. Y., and John

T. Ryan, of Delmar, N. Y., of counsel), for plaintiffs Public Service Comm'rs of State of New York.

Whalen, McNamee, Creble & Nichols, of Albany, N. Y. (Robert E. Whalen and Frank A. McNamee, Jr., both of Albany, N. Y., of counsel), for defendants New York Cent. R. Co. and Raquette Lake Ry. Co.

Elmer B. Collins, Sp. Asst. to Atty. Gen., Harold M. Stephens, Asst. Atty. Gen., and Oliver D. Burden, U. S. Atty., of Syracuse, N. Y., for the United States.

E. M. Reidy, Asst. Chief Counsel of Interstate Commerce Commission, of Washington, D. C. (Daniel W. Knowlton, of Washington, D. C., of counsel), for intervening defendant.

Before AUGUSTUS N. HAND, Circuit Judge, and COOPER and KNIGHT, District Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is a suit in equity to set aside a certificate of the Interstate Commerce Commission entered on February 27, 1934, providing: "That the present and future public convenience and necessity permit (1) the Raquette Lake Railway Company to abandon as to interstate and foreign commerce its entire line of railroad in Herkimer and Hamilton Counties, N. Y., * * * and (2) The New York Central Railroad Company to abandon operation of said line."

A motion was made to suspend the operation of the foregoing certificate pendente lite. The cause itself came on for a hearing at Albany on July 2, 1934, before a three-judge court pursuant to 28 U. S. C. §§ 46, 47, 48 (28 USCA §§ 46, 47, 48). The evidence in the case, as well as the affidavits relating to the preliminary injunction, were there submitted and final decision as to both interlocutory and final relief was reserved. We think that the motion for a preliminary injunction should be denied and the bill of complaint dismissed.

In May, 1932, the Raquette Lake Railway Company and the New York Central filed a joint application with the Interstate Commerce Commission under section 1 (18) of the Interstate Commerce Act (49 USCA § 1 (18), wherein the Raquette Lake sought permission to abandon its entire line of railroad extending from a connection with the New York Central at Carter, N. Y., northeasterly to Raquette Lake 18.13 miles, and the New York Central to abandon the operation of said line. In the same month the Raquette Lake filed an application with the New York Public Service Commission asking permission to discontinue all stations on the line. Protests against the abandonment were filed both with the federal and state commissions. The state commission requested that the Interstate Commerce Commission withhold action upon the application for abandonment until disposition had been made of the proceeding for discontinuance of the stations. Thereupon, on August 9, 1932, the state commission issued an order denying the petition and requiring the Raquette Lake to maintain station facilities for the convenience of the public during the summer season of each year from June 15 to September 30, inclusive. After the decision of the state commission, which was concerned only with intrastate commerce, the Interstate Commerce Commission proceeded with the matters within its jurisdiction. The testimony offered at the hearings before the state commission and copies of the exhibits introduced in evidence at those hearings were, by stipulation, used as the record before the Interstate Commerce Commission. Upon this record, an examiner of the Interstate Commerce Commission recommended that the application to it be denied. Exceptions were filed to his report by New York Central and by Raquette Lake Railway and a hearing was had before Division 4 of the Interstate Commerce Commission. On February 27, 1934, the Commission overruled its examiner and issued the certificate from which we have already quoted permitting (1) Raquette Lake Railway to abandon as to interstate and foreign commerce its entire line and (2) the New York Central to abandon the operation of such line.

Section 16a of the Interstate Commerce Act (49 USCA § 16a) provides for applications for a rehearing before the entire Commission consisting of eleven members, but the plaintiffs herein did not seek to exhaust the foregoing administrative remedy by asking for a rehearing, and took no further steps in the matter until June 8, 1934, when they instituted the present suit.

The line sought to be abandoned is a single-track standard gauge railroad constructed in 1900 for the primary purpose of providing transportation for summer tourists to and from Raquette Lake and other summer resorts in the Adirondack Mountains and for handling outgoing shipments of forest products. The New York Central and its predecessor operated the railroad property from the beginning until September 15, 1933. The last operating agreement made in 1928 pro-

vided that the Central should operate the Raquette Lake, collect the revenues, and assume any deficits: It might be terminated on 60 days' notice and recently was so terminated. The operation was always at a large loss.

■ According to the accounts of the Raquette Lake Railway, the net income deficits in the years 1927–1931, after allowing for railway tax accruals, uncollectible railway revenues, equipment rents, and other deductions, were: $51,472.97 in 1927, $53,528.26 in 1928, $49,806.07 in 1929, $41,424.26 in 1930, and $82,528.03 in 1931. The Interstate Commerce Commission found that the charges for maintenance of way and for maintenance of equipment averaged $47,796.49 annually, and that if these items were entirely eliminated the operation of the line would have still resulted in an average annual loss of $7,955.43 during these years. In the oral argument before the Commission it was stated by Thomas P. Healy, appearing on behalf of the Raquette Lake Railway and the New York Central, that in 1933 the line, when run only between June 15 and September 15 as permitted by the state commission, had gross revenues of only $5,600, and out-of-pocket expenses, without any allowance for overhead, of $13,611.83, making a deficit for that year of $8,011.83. The inbound freight had become reduced to 17 carloads of coal, 2 carloads of crushed stone, 1 carload of asphalt, 13 carloads of petroleum products, 2 carloads of canned goods, 1 carload of fertilizer, and 108 tons of less than carload freight—altogether 1,208 tons, as against 11,939 in 1927, 13,928 in 1928, 18,068 in 1929, 7,242 in 1930 and 4,558 in 1931. The outbound freight in 1933 was practically nothing. The number of passengers in 1933 was 4,779, as against 18,044 in 1927, 17,095 in 1928, 15,829 in 1929, 9,404 in 1930 and 7,267 in 1931.

The items of 1933 we think were open to consideration by the Interstate Commerce Commission because plaintiffs' solicitor, Mr. Cross, stated at the hearing that he had no objection to the statement of them if they were taken with certain qualifications which he proceeded to argue. These qualifications were apparently based upon the contention that the freight rates were so high as injuriously to affect the business carried on over the line. He now insists that his concession that the statement by Mr. Healy of the 1933 items might be used was not as unrestricted as appears in the transcript. If such were the case, he should have moved to correct the minutes of the proceeding before the Inter-

state Commerce Commission and revise its report as soon as he became aware that it had used the 1933 items therein. But those items did no more than add to proof of decreasing business and serious loss that was otherwise convincing.

The operating revenues and expenses for the period 1927–1931, inclusive, as annually reported by the Raquette Lake Railway were as follows:

Revenues.

| | |
|---|---|
| 1927 | $41,543.09 |
| 1928 | 42,729.08 |
| 1929 | 40,266.88 |
| 1930 | 28,081.67 |
| 1931 | 20,996.79 |

Expenses.

| | |
|---|---|
| 1927 | $85,744.86 |
| 1928 | 88,492.42 |
| 1929 | 82,227.36 |
| 1930 | 57,801.13 |
| 1931 | 96,064.51 |

It is claimed that the expenditures were extravagant and the charges to overhead in connection with the operation by the New York Central too large, but, allowing for any reasonable adjustment in such matters, there was certainly ample showing of a large annual deficit, and a finding of substantial annual deficits irrespective of any overhead or excess maintenance was inevitable.

The state commission, owing to a well-nigh complete disappearance of freight from the Raquette Lake Railway, allowed it to discontinue service except during the three months between June 15 and September 15. The record before us shows that the summer service, especially the sleeping car service to and from New York and elsewhere, remained a convenience to Adirondack cottagers and tourists even after a state road was opened from Thendara to Raquette Lake in 1930, whereby private automobiles and buses might enter the lake region. But as soon as the state road came into the picture it was evident that the days of the Raquette Lake Railway were numbered. The business of carrying pulpwood to market, which was at one time considerable, had dropped to nothing, and the passenger and freight business by rail had decreased 50 per cent.

■ Though the Raquette Lake line be abandoned, the New York Central will still carry passengers over its line to Thendara, where they can leave the sleeper and go by private motor or bus to their destinations in the locality. There was testimony that this breaking of the journey would cause damage to hotels, camps, and cottagers, and we doubt

not that such will be the case. But the Interstate Commerce Commission here had the problem not uncommon nowadays of determining how far a carrier engaged in interstate commerce should be required to continue service at a constantly increasing loss where great numbers of the people served have abandoned transportation by rail for travel by private motors and buses. The solution of such a problem is a matter particularly within the competence and province of the Commission, and there can be no doubt that substantial evidence was adduced in support of its findings.

■■■ It is contended on behalf of the plaintiffs that the New York Central, which owns all the stock of the Raquette Lake Railway and has been operating it under an agency agreement, stands in such relation to it that the Raquette Lake Railway is but a branch line and that the losses incurred in operating that branch line should be viewed in relation to the business of the New York Central as a whole. In support of this, it is argued that the entire financial condition of the New York Central should have been developed at the hearing before the Interstate Commerce Commission in order that the latter might judge of the relative importance of the burden upon the Central as an interstate carrier and the benefit to the public if the Raquette Lake continued to be operated.

Should the Raquette Lake line be regarded as legally independent of the New York Central, there can be no doubt that the Commission could authorize the abandonment of a wholly profitless enterprise, the continuance of which on its own behalf would inevitably result in the immediate loss of all its property. If, on the other hand, because of its intimate relation with the New York Central, which owns its stock and controls its operations, it is in essence a branch line, abandonment may not be had "unless and until there shall first have been obtained from the commission a certificate that the present or future public convenience and necessity permit of such abandonment." Interstate Commerce Act § 1 (18), 49 USCA § 1 (18). However suitable the consideration of the finances of the New York Central might have been in some situations as bearing upon the granting of a certificate of convenience and necessity, we do not think there is any rule of law which made it necessary to introduce such proof as part of the railroads' case in the proceeding before the Interstate Commerce Commission which we are reviewing. If the objectors desired its consideration, they were at liberty to call for it. Indeed, it was all in the files of the Commission and might readily have been obtained. We think without it the Commission might find that the short branch of the Raquette Lake Railway, which always showed a large deficit in operation, has lost 50 per cent. of its former business and is now paralleled by a state road, traversed by automobiles and buses, should be abandoned without any improper sacrifice of public convenience. State of Colorado v. United States, 271 U. S. 153, 46 S. Ct. 452, 70 L. Ed. 878; Transit Commission v. United States, 284 U. S. 360, 52 S. Ct. 157, 76 L. Ed. 342; United States Feldspar Corporation v. United States (D. C.) 38 F.(2d) 91. It must be remembered that testimony as to loss people may suffer from a change in their habits of doing business is likely to present an exaggerated picture and that the seriousness and extent of such loss was a matter wholly for the decision of the Commission. The findings of the Commission made after a fair hearing are conclusive, and the courts will not weigh the evidence nor consider the wisdom of its action. Chicago, R. I. & P. Ry. v. United States, 274 U. S. 29, 47 S. Ct. 486, 71 L. Ed. 911. Its jurisdiction in determining whether the continuance of the operation of the line was a burden upon interstate commerce was paramount. The additional evidence offered before us at the final hearing in the form of affidavits can afford no basis for our decision. This suit is essentially a statutory review of the certificate and orders of the Interstate Commerce Commission made upon the record before it. Any evidence which the parties desired to submit should have been presented to it and should not be allowed to affect the disposition of this suit. Florida v. United States, 292 U. S. 1, 54 S. Ct. 603, 78 L. Ed. 1077; Mississippi Valley Barge Line Co. v. United States, 54 S. Ct. 692, 78 L. Ed. 1260; Manufacturers' Railway Co. v. United States, 246 U. S. 457, 489, 38 S. Ct. 383, 62 L. Ed. 831. Moreover, the affidavits add nothing of substance to what was before the Commission.

■■■ The certificate of the Interstate Commerce Commission that public convenience and necessity permit the Raquette Lake Railway to abandon its entire line as to interstate and foreign commerce, and the New York Central to abandon operation thereof, was based upon sufficient evidence to justify the Commission's action.

Accordingly, the motion for a preliminary injunction is denied and the bill is dismissed, but without costs.