In the Matter of the Estate of MARTIN J. CREGAN, Deceased.

SARAH V. CREGAN et al., as Executors of MARTIN J. CREGAN, Deceased, et al., Appellants; STATE TAX COMMISSION, Respondent.

Argued May 19, 1937; decided July 13, 1937.

*Simon M. Platt* for appellants. The Surrogate correctly allowed an exemption to each of the six children of the decedent. (Cons. Laws, ch. 60, §§ 249-q, 249-v). The bequests to the children became vested at the time of testator's death. (*Matter of Crane,* 164 N. Y. 71; *Matter of Leonard,* 143 Misc. Rep. 172.) Any doubt must be resolved in favor of the taxpayer. (*Lucas* v. *Mercantile Trust Co.,* 43 Fed. Rep. [2d] 39; *Matter of Dunn,* 118 Misc. Rep. 426.)

*Seth T. Cole* for respondent. Exemptions under section 249-q of the Tax Law (Cons. Laws, ch. 60) are allowable only when it is certain that the persons specified therein will receive property from the estate of a decedent, and cannot be permitted where transfers to such persons are contingent. (*Matter of Chollet*, 148 Misc. Rep. 782; *Matter of French*, 148 Misc. Rep. 313; *Matter of Weiden*, 263 N. Y. 107; *Matter of Lande*, 241 App. Div. 138; *Humes* v. *United States*, 276 U. S. 487; *Farrington* v. *Commissioner of Internal Revenue*, 30 Fed. Rep. [2d] 915; *Matter of Smith*, 246 App. Div. 99; *Matter of Smith*, 147 Misc. Rep. 73; *Matter of Mead*, 145 Misc. Rep. 893; *Matter of Leichtman*, 147 Misc. Rep. 589.)

LEHMAN, J. In his last will and testament, probated in Bronx county where the testator resided, Martin J. Cregan provided that after payment of minor bequests, the residue of his property should be held in trust for the following uses and purposes:

" *Ninth:* To pay the income thereof to my beloved wife, Cecelia Elizabeth Cregan during her life.

" *Tenth:* At the time of the death of my beloved wife, Cecelia Elizabeth Cregan, I will and direct that my executors and trustees shall pay over to my beloved children hereinafter named, the fractional part of my residuary estate as hereinafter mentioned.

" (a) To my beloved daughter, Sarah V. Cregan one-fourth (1/4) of the said residuary estate.

" (b) To my beloved son, John Cregan, one-sixth (1/6) of the residuary estate.

" (c) To my beloved son, Martin C. Cregan, five-twenty-fourths (5/24) of the said residuary estate.

" (d) To my beloved daughter, Cecelia Hart, one-eighth (1/8) of the said residuary estate.

" (e) To my beloved son, Lester W. Cregan, one-eighth (1/8) of the said residuary estate.

" (f) To my beloved son, Cornelius F. Cregan, one-eighth (1/8) of the said residuary estate.

" *Eleventh:* If any of the beneficiaries, who take out of my residuary estate, shall die before my beloved wife, Cecelia Elizabeth Cregan, then in that event I will and direct that the proportionate part that the said beneficiary would have taken shall be divided equally among my remaining beloved children living at the time the said residuary estate is divided as provided in paragraph tenth of my will herein."

The Tax Law (Cons. Laws, ch. 60) imposes a tax " upon the transfer of the net estate of every person * * * who, at the time of death was a resident of this state, but net estates which, after deducting the applicable exemptions under section two hundred forty-nine-q of this article, do not exceed two thousand dollars shall not be taxable." (§ 249-n.) Sections 249-r and 249-s define respectively the " gross estate " and the " net estate " of a decedent and the manner in which each shall be determined. In this case the value of the " gross " estate of the decedent has been fixed at $31,881.52 and the value of the net estate fixed at $26,878.25. The correctness of the value of the net estate so fixed is not challenged upon this appeal. The dispute between the executors of the estate and the State Tax Commission concerns the amount of the " applicable exemptions under section 249-q " which must be deducted from the net estate before the tax is fixed.

That section provides: " The tax * * * imposed by section two hundred and forty-nine-n * * * shall not be payable with respect to (a) The amount of the net estate not exceeding twenty thousand dollars transferred to a husband or wife; (b) The amount of the net estate, not exceeding five thousand dollars in each instance, transferred to a lineal ancestor or descendant * * *." The amount of the net estate transferred to the decedent's wife has been fixed at $7,717.19 and an exemption of that amount has been allowed under subdivision a. The question to be determined upon this appeal concerns the amount of the net estate transferred to each of the

decedent's children for which an exemption must be allowed under subdivision b.

Article 10-C of the Tax Law (Laws of 1930, ch. 710), of which the sections above quoted are a part, substitutes an estate tax similar to the Federal estate tax for the inheritance tax imposed by the earlier statute. It was enacted upon the recommendation of the Commission to Investigate Defects in the Law of Estates. In its report (p. 195) the Commission stated that the statute "abolishes the present double system of taxation of estates in New York. The present transfer tax law is repealed and there will be one uniform system of taxation based upon an *estate* tax. The procedure has been made as similar as possible to that of the Federal Estate tax, with certain necessary changes." (Legislative Document, 1930, No. 69.) Few cases which involve questions concerning the construction and effect of the provisions of the new statute have heretofore been presented to this court, but in *Matter of Weiden* (263 N. Y. 107) the court indicated that in determining the effect of provisions of the New York Tax Law, weight should be given to the construction placed upon analogous provisions in the Federal statute "for the purpose of maintaining the uniformity of administration of the Tax Law which the Legislature has sought to achieve."

The tax is "upon the transfer of the net estate" of the decedent and is based upon the value of the estate transferred when the transfer takes place, *i. e.*, the date of the decedent's death. Every interest of the decedent in real or personal property is "transferred" within the contemplation of the statute upon his death and is included in the gross estate, and, subject to the deductions permitted and defined by the statute, becomes part of the "net estate." The tax "comes into existence before and is independent of the receipt of the property by the legatee. It taxes, as Henson, Death Duties, puts it in a passage cited in 178 U. S. 49, ' not the interest to which some person succeeds on a death, but the interest

which ceased by reason of the death.' It levies a sum equal to a certain percentage of the value of the net estate, and provides the criteria by which the net estate shall be ascertained." (*Edwards* v. *Slocum*, 264 U. S. 61, 62.)

" Estates, as respects the time of their enjoyment, are divided into estates in possession, and estates in expectancy." (Real Prop. Law [Cons. Laws, ch. 50], § 35.) The " transfer of the net estate " of a decedent upon which the tax is imposed may result in the creation of an estate in possession which is subject to " determination, by lapse of time or otherwise," and a future estate limited to " commence in possession at a future day." (Real Prop. Law, § 37.) Such future estate may be contingent because " the person to whom or the event on which it is limited to take effect remains uncertain." (Real Prop. Law, § 40.) Even if not " contingent " it may be subject to conditions which may defeat it. Thus, although the entire estate of a decedent is transferred upon his death, until some future time thereafter it may be impossible to determine whether an estate in expectancy in the defendant's property will ripen into an estate in possession, or, on the other hand, how long an immediate estate in possession will continue. Such uncertainties necessarily affect the value of separate estates or interests in the property of the decedent " to which some person succeeds upon [his] death." They do not affect the value of the decedent's estate which " ceased by reason of [his] death."

The tax is, however, not levied upon the entire gross estate, which is " transferred," but, subject to specified exemption, upon the " net estate " ascertained by the criteria provided in the statute. For the purpose of the tax, the value of the net estate is determined by deducting from the value of the gross estate amounts defined in section 249-s of the Tax Law, including " the amount of all bequests, legacies, devises, or transfers, to or for the use of * * * any corporation * * * organized

and operated exclusively for religious, charitable, scientific, literary, patriotic, historical, bar association, or educational purposes * * *." To fix the amount of the bequest, legacy, devise or transfer which may be deducted, the value of the estate which is transferred must be determined. Where such determination is impossible, there can be no deduction. So, too, there can be no exemption from the tax as provided in subdivisions a and b of section 249-q of the Tax Law until there has been a determination of the value of the estate transferred to one of the persons enumerated in that section. In such determination any contingency upon which the estate is made dependent becomes an important factor.

Where there is a bequest, devise or transfer of a future contingent estate or a future vested estate which may be defeated by a contingency, there is uncertainty not only as to when but as to whether the future estate will ripen into possession. Where there is a bequest, devise or transfer of a present estate in possession which is subject to determination by lapse of time or otherwise, the uncertainty concerns only the duration of the estate transferred. In the latter class of cases there is usually no difficulty in determining the value of the estate, at least, where from known data such as are embodied in accepted mortality tables, a reasonable estimate of value may be made. " Like all values, as the word is used by the law, it depends largely on more or less certain prophecies of the future; and the value is no less real at that time if later the prophecy turns out false than when it comes out true." (*Ithaca Trust Co.* v. *United States*, 279 U. S. 151, 155.) The problem may be more difficult where a deduction or exemption is claimed for value of a future estate when there is uncertainty not only as to when but also as to whether it will ripen into possession. There, too, it has been said that the deduction should be made when there is " no uncertainty appreciably greater than the general uncertainty that attends human affairs." (*Ithaca Trust Co.* v. *United States, supra*, p. 154.)

On the other hand, where there is only a speculative possibility that the contingency will arise upon which a future expectant estate will ripen into an estate in possession and there are no known data from which the actual value of such an estate can be determined, no deduction should be made for a contingent gift of such an estate. (*Humes* v. *United States*, 276 U. S. 487.)

The provisions of the Federal statute, which the Supreme Court of the United States construed in these cases, are not identical in language, with the provisions of the Tax Law of this State which we are called upon to construe. They are, however, similar both in form and purpose and we do not in this opinion intend to depart from the rule laid down in either case. In *Humes* v. *United States* (*supra*) the court stated the question and answer as follows: " Did Congress in providing for the determination of the net estate taxable, intend that a deduction should be made for a contingency, the actual value of which cannot be determined from any known data? Neither taxpayer, nor revenue officer — even if equipped with all the aid which the actuarial art can supply — could do more than guess at the value of this contingency. It is clear that Congress did not intend that a deduction should be made for a contingent gift of that character " (p. 494). In the prevailing opinion of the Appellate Division in the instant case (249 App. Div. 200, 203) it is said: " Exemptions under section 249-q of the Tax Law are allowable only when it is *certain* that the persons specified therein will receive property from the estate of a decedent, and cannot be permitted where transfers to such persons are dependent *upon survival* of the beneficiary although vested in the legal sense at testator's death." (Italics ours.) We are told that the *Humes* case supports such a rule, at least by analogy. We do not so construe that case. Deduction, it was there said, should be denied for contingent gifts of " *that character.*" Assuming that the same test should be applied to exemptions under

section 249-q, the problem still remains in each case whether the particular transfer for which exemption is sought are gifts of " that character." We hold that the bequests to the testator's children are not such gifts but are gifts which are entitled to exemption from the tax.

We do not stress the distinction between the gift of a contingent remainder and the gift of a vested remainder which is subject to divestment upon the happening of a contingency. We base our decision primarily upon the nature and practical effect of the contingency. The testator left $26,000 to his wife and children. No others received any interest, contingent or otherwise, in the fund. If every remainder failed, the children would succeed to the property by virtue of the reversion retained by the testator. The wife's life estate was valued in accordance with the appropriate mortality tables at approximately $7,000. Each child had a remainder interest in a share of the property dependent only upon survival of the mother. The value of a remainder which would be defeated only by the contingency that the child might die before the mother may of course be estimated upon the basis of mortality tables and involves " no uncertainty appreciably greater than the general uncertainty that attends human affairs." " The value of property at a given time depends upon the relative intensity of the social desire for it at that time, expressed in the money that it would bring in the market " (*Ithaca Trust Co.* v. *United States, supra,* p. 155), and if the chance of the happening of the contingency may be estimated from known data like mortality tables, it would appear that a determination of such value may be made with reasonable certainty. There lies, we think, the distinction between *Humes* v. *United States* and *Ithaca Trust Co.* v. *United States,* as pointed out by Mr. Justice Holmes in the latter case.

In the *Humes* case, as we have said, deduction was denied for transfer of a future estate dependent upon a remote and speculative chance. The conclusion of the

court that Congress did not "intend that a deduction should be made for a contingent gift of *that* character" rests upon a sound foundation. The expectant estates for which exemption is asked in the instant case are not dependent upon a remote and speculative contingency but on the contrary depend upon a contingency which is probable and which can be appraised from known data. There is nothing in the statute or in the circumstances of this case that suggests that the Legislature "did not intend that exemption should be allowed for a contingent gift of that character."

It may not be easy to determine in every case upon which side of the line an asserted exemption or deduction falls. We do not attempt to lay down a rule which will cover every case. We decide only that under the statute exemption is allowed for the transfer of estates in expectancy as well as estates in possession; that the Legislature did not indicate any intention to confine the exemption to transfers of expectant estates which are not dependent upon *any* contingency; but that exemption must be allowed under the plain language of the statute for the "value" of any estate, whether in possession or expectant, when that "value" can be determined with reasonable certainty upon the basis of known data; and that the value of an expectant estate dependent only upon the contingency of survivorship can be so determined.

The order of the Appellate Division should be reversed and the decree of the Surrogate's Court affirmed, with costs in the Appellate Division and in this court.

CRANE, Ch. J., O'BRIEN, HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur.

Ordered accordingly.