## In the Matter of the Estate of LUIGIA MANCUSO, Deceased.

Surrogate's Court, Orange County, March 2, 1939.

*Bull & Morreale* [*Paul Morreale* of counsel], for the executors.

*Allen J. Indzonka, Jr.*, for the State Tax Commission.

TAYLOR, S. The executors move for an order declaring this estate exempt of estate tax and meet opposition by the State Tax Commission.

The decedent died on the 12th day of October, 1938, leaving a last will and testament, which has been duly admitted to probate.

The facts set forth in the affidavit upon which the motion is made are not disputed and are, therefore, for the purpose of this motion accepted as true. (Surr. Ct. Act, § 76.)

From the affidavit it appears that the decedent died seized of a residence property, the value of which at the time of her death did not exceed $6,000. There was a deposit of $1,803.70 in the Middletown Savings Bank in the names of this decedent and her husband in form payable to the survivor. In the absence of proof that some portion, or all, of this account was really the property of the husband, the full amount of the account would be included

in the estate assets for the purpose of taxation. The executors have presented an affidavit which sets forth that these moneys were the sole property of the survivor, and that affidavit the surrogate likewise accepted as true.

The funeral expenses, debts and administration expenses are itemized and total $1,604, so that the net estate is $4,396.

The will gives to the husband a life estate in all of the real and personal property of which decedent died seized and possessed, with the right to the husband to use any or all of the decedent's property, if necessary, for his support and maintenance, and the remainder is given to the decedent's daughter.

The learned counsel for the State Tax Commission earnestly argues that because of the right to invade the principal it cannot now be said definitely that the husband is the absolute owner of all the decedent's property, nor can it be said that the remainderman at the time of the decedent's death was the unqualified owner of the corpus.

The ultimate solution of this estate may result in one of the following contingencies:

1. (a) The husband might be content with the income only and not at all invade the principal, in which event the value of the life estate being obviously less than the corpus value and being less than $20,000 would be wholly exempt, and (b) in which event the remainder interest, if received by the remainderman without diminution being less than $5,000, would be wholly exempt to the daughter. (Tax Law, § 249-q.)

2. The husband might invade the principal in part and the remainder interest would be lessened by that amount with the same exemption results were the situation as outlined in the preceding paragraph.

3. The husband might invade the principal to the extent of consuming all of it, leaving nothing whatever for the remainderman, and if these were the results, then the tax exemption situation would not be changed.

It is urged, however, that there is no known data (mortality tables and the like) from which we may now determine whether the life tenant will invade the principal, and if invaded to what extent, so that no one can definitely say just how much of the principal will ultimately be received by the life tenant. This doubt, it is said, precludes the allowance of any exemptions.

There seems to have been some doubt previous to the decision of *Matter of Cregan* (275 N. Y. 337) as to the effect upon the right to exemptions in cases where there were any contingencies which might reduce the amount of a legacy or devise before it came into possession of the ultimate outright owner. After expressly stating

that the court did not attempt to lay down a rule which would cover every case, it was determined that under the statute exemption is allowed for the transfer of estates in expectancy as well as estates in possession; that the Legislature did not indicate any intention to confine the exemption to transfers of expectant estates which are not dependent upon *any* contingency; but that exemption must be allowed under the plain language of the statute for the " value " of any estate, whether in possession or expectant, when that " value " can be determined with reasonable certainty upon the basis of known data; and that the value of an expectant estate dependent only upon the contingency of survivorship can be ·so determined.

In the case under consideration there can be no doubt that the remainder is vested, subject to diminution in amount by invasion of the principal by the life tenant. (*Matter of Johnson*, 212 App. Div. 768.) Quite appropriate here is the statement of the late Associate Justice HOLMES in treating of the question whether remainder interests should be computed as of conditions existing at the time of the decedent's death, or be governed by subsequent occurring events that " the estate so far as may be is settled as of the date of the testator's death  *  *  *. Therefore the value of the thing to be taxed must be estimated as of the time when the act is done  *  *  *. Like all values, as the word is used by the law, it depends largely on more or less certain prophecies of the future, and the value is no less real at that time if later the prophecy turns out false than when it comes out true." (*Ithaca Trust Co.* v. *United States*, 279 U. S. 151.)

The " values " here are such that if the husband takes the entire estate, principal and income, it would be well under the $20,000 exemption, and to go to the other possible extreme if the full corpus ultimately comes into possession of the remainderman, the amount would be less than the exemption provided in such cases. Where, then, is there such uncertainty (if there is any at all) that no exemption should be allowed? It is not possible for any person to receive under this factual situation an amount in excess of the pertinent statutory exemption.

There was more uncertainty in the *Cregan* case than here in that there it was possible the whole remainder would ultimately vest in one person and be beyond the pertinent exemption amount. But the court held that by the use of mortality tables it could with reasonable certainty be determined that the testator's children would outlive their mother.

Our present State law is patterned after the Federal statute and we may, therefore, look to like decisions in the Federal courts. (*Matter of Cregan*, 275 N. Y. 337; *Matter of Weiden*, 263 id. 107.)

In the *Ithaca Trust Co.* case (*supra*) it appeared that the residuary estate was given to the widow for life with authority to use from the principal any sum necessary to suitably maintain her " in as much comfort as she now enjoys," with remainder over to charity, and it was held that this uncertainty in that particular case was not such as precluded the right to claim exemption in respect to the charities.

A situation somewhat similar to that in the *Ithaca Trust Co.* case arose in *Millard* v. *Humphrey* (7 F. Supp. 784) in which it appeared that the right of the widow to invade the principal for her support and maintenance was not entirely discretionary with her, that from the testimony as to the station in life of the parties and the cost of living, it was determined that the income was sufficient to support the wife and that the amounts to which the charities were entitled could be determined by deducting the value of the life interest, and exemption should be allowed.

Practically the same situation existed in *First National Bank* v. *Snead* (24 F. [2d] 186) and the same result was reached.

In *Herron* v. *Heiner* (24 F. [2d] 745) a trust was created to provide income for the support of the decedent's incompetent brother and sister, with the right of invasion of the principal if necessary, and there, too, it was held that the power of invasion did not give the trustees authority to appropriate the entire income of the estate for the support and maintenance of these two persons, unless that course were necessary to carry out the testator's intention, and that for the purpose of computing the estate tax effect should be given to the limitation of the trustee to such sums as were necessary and reasonable for the incompetents' support and maintenance.

In *Lucas* v. *Mercantile Trust Co.* (43 F. [2d] 39) the will provision directed the trustees to pay over to the wife all of the income and if need be such part of the corpus thereof as might be necessary for her comfort, maintenance and support during her life, and the government there contended that under this will provision the widow was given the unlimited right to invade the corpus of the trust and absorb any part or all for her comfort, support and maintenance and, therefore, the value of the charitable bequests could not be ascertained, and hence could not be deducted from the gross estate for the purpose of computing the net estate subject to tax. After referring to the *First National Bank, Ithaca Trust Co.* and other cases, the court said:

" We are satisfied that here the amount necessary for the comfort, maintenance, and support of the widow was not left entirely to her discretion. She was to have, *if need be*, such part of the corpus as might be necessary for her comfort, maintenance and

support during her life. If the will had said, as in the *Ithaca Trust Company* case, ' that may be necessary to suitably maintain her in as much comfort as she now enjoys,' the cases would have been parallel, but considering all the terms of this will, the result is the same. Some one must determine what the term ' if need be ' means; also what the phrase, ' may be necessary for the comfort, maintenance and support of my wife during her life,' means, and the one to determine that within reasonable bounds was the trustee. If a trustee, upon a mere written notice of the widow that she needed the entire corpus of the estate for her comfort, maintenance, and support, should turn over the same to her, it would, in our judgment, be guilty of dereliction of duty.

" Certainly the trustee was to exercise some control. Why a trusteeship at all if the widow could, if she desired, take the entire estate for her comfort and convenience? If the government's theory is correct, the trustee might know she did not need it but would be powerless to stop her squandering the entire estate if she so desired. All the bequests for charitable purposes could be cut off at the whim of the widow by merely sending a written communication to the trustee that she needed the entire estate for her comfort and support. The request in writing to the trustee by her stating the sum needed for such support was mere authority to him to pay her if such sum was in his judgment in good faith needed to maintain her in a manner befitting her station in life. The entire will shows that the power of the widow is limited and restricted by the judgment of the trustee. The desire of the testator is apparent. His humane purposes, after providing amply for his widow, to assist unfortunate and afflicted humanity should not be destroyed by a strained and almost ridiculous construction of the will." The conclusion of the Board of Tax Appeals " that the present values of these bequests at the date of death of the testator are deductible from the gross estate in determining the net estate subject to taxation " was affirmed.

᾽ This case is to be distinguished from such cases as *Matter of Bangs* (165 Misc. 838); *Matter of Byrnes* (167 id. 531), and *Matter of Freifeld* (168 id. 370), in that the remainders in those cases were so uncertain of ascertainment that they " cannot be determined from any known data. Neither taxpayer, nor revenue officer — even if equipped with all the aid which the actuarial art can supply — could do more than guess at the value of this contingency." (Mr. Justice BRANDEIS in *Humes* v. *United States*, 276 U. S. 487.)

Determining, therefore, that there is no possibility of this estate vesting in any one whose amount of exemption would be greater than the total estate, order may be presented declaring the estate exempt.