In the Matter of the Estate of WILLIAM B. BIRDSALL, Deceased.

Surrogate's Court, Orange County, June 4, 1941.

*Charles H. Borland* for the executors, appellants.

*Allen J. Indzonka, Jr.,* for the State Tax Commission, respondent.

TAYLOR, S. The executors appeal from the *pro forma* tax order and allege error in that no exemption was allowed the remainderman. The exemption was disallowed upon the theory that there is no known data by which the amount of the remainder can now be determined, while the position of the executors is that this amount may now be reasonably determined by means of proof of the present trust income and the life beneficiary's manner and cost of living.

This problem presents first for discussion the meaning of paragraph " two " of the will which sets up a trust of the residue of the estate " to take, hold and receive the same and to apply the entire net income, interest or profit therefrom and, in addition thereto, whatever portion of the principal thereof may be necessary for the proper maintenance and support of my wife, Jessie Reed Birdsall, during her lifetime." Does this clause of the will authorize the life beneficiary to invade the principal if the income be insufficient for her " proper maintenance and support " in exoneration of her own independent funds?

In analyzing this paragraph of the will, it is observed that the gift of principal, as well as the gift of income, precedes the purpose for which such gifts are to be used. Otherwise expressed, the gift of principal is as broad as the gift of income.

It would serve no useful purpose to review all the cases construing similar will provisions, for that was very ably done by Surrogate WINGATE in *Matter of Gatehouse* (149 Misc. 648).

In *Holden* v. *Strong* (116 N. Y. 471) the will therein construed gave to the trustee authority to use so much of the trust fund, either interest or principal, as should in his judgment and discretion be necessary for the proper care, comfort and maintenance of the beneficiary, and the court adopted the construction that the plaintiff was entitled to support and maintenance according to his condition in life even though he might be able to support himself by his own exertions.

In *Rezzemini* v. *Brooks* (236 N. Y 184) it was held that the provision " if the income   *   *   *   shall be insufficient for the proper support of my said son, then in that event, I authorize and empower my said trustee to expend so much of the principal thereof as may be necessary for that purpose," should be interpreted to mean that the beneficiary should have his entire support from the trust fund, first from income and then if that be insufficient from principal.

*Matter of Martin* (269 N. Y. 305) may be distinguished from the case under consideration, in that there the invasion of principal was to be allowed to the extent that the beneficiary " may require " for her care, support and comfort. The court there held that this gift of support and maintenance in so far as it permitted invasion of the principal was not made absolute, but dependent upon the needs or requirements of the beneficiary, and that there could be no " needs or requirements " if the trust income, supplemented by the beneficiary's own income, was sufficient.

The interpretation of this will may turn upon the construction to be given the word " necessary." As before noted, as the gift of principal, as well as the gift of income, preceded the characterization of its use, it would seem that the draftsman used the word " necessary " not as limiting the *right* of principal invasion to those instances wherein the beneficiary could not be properly maintained and supported by both the trust income and her own independent resources, but as limiting the amount thereof. This construction is fortified by the use of the words " in addition thereto " which serve in a sense to couple together and to make as one the gifts of income and principal.

The main basis of this appeal is the non-allowance by the appraiser of an exemption to the remainderman, decedent's son, upon the ground that by reason of the life beneficiary's right to invade the principal for her support and maintenance, the amount which the remainderman will receive is uncertain.

In connection with this appeal the estate has submitted proof that the ncome from the trust is now $424.75 per year, and that it costs the life beneficiary $955 a year for living expenses. It also appears from the proof submitted that the decedent was covered by the Federal Social Security Act and that at the age of sixty-five the life beneficiary, his widow, will receive thereunder $31.20 per month.

The invasion of pr ncipal being permitted for a limited purpose only, it may not be assumed the beneficiary will unlawfully use or waste the corpus which it is her duty to preserve for the benefit of the remainderman. (*Matter of Bushnell*, 73 App. Div. 325; affd., 172 N. Y. 649.)

The attorney for the appraiser very earnestly urges that this court has no alternative under section 249-v of the Tax Law but to affirm his determination, the statute providing that " The value of every future or limited estate, income, interest or annuity for any life or lives in being, or in any way dependent upon any life or lives in being, whether vested or contingent, shall be determined by the rule, method and standard of mortality and value

employed by the Superintendent of Insurance in ascertaining the value of annuities for the determination of liabilities of life insurance companies and according to the actuaries' or combined experience table of mortality, as extended," except that the rate shall be four per cent per annum. The Superintendent of Insurance has certified the value according to this rule of the beneficiary's life estate and no appeal has been taken from the fixation of tax based thereon. That the present value of the remainder cannot be now determined by the Superintendent of Insurance according to the rules, methods and standards now employed by him in ascertaining life insurance annuity values is admitted, practically speaking, because of the State Tax Commission's contention that such valuation is too uncertain for present computation.

The diligent research of counsel and the independent efforts of the surrogate have disclosed no case squarely deciding the point in issue, unless it may be said to be *Matter of Stroh* (171 Misc. 681). The report of that case would seem to indicate that there was not submitted any proof of the cost of the life beneficiary's maintenance and support, and there were in the case other contingencies which had considerable weight with the learned surrogate.

On the other hand, the facts proved in this case go but a step farther than, and at the same time present an application of the principle worked out in, *Matter of Mancuso* (170 Misc. 298). If the court in that case could determine there was not such uncertainty as to preclude the allowance of an exemption to the remainderman because the net estate was under $5,000, the life beneficiary being the husband who had the right to invade the principal and the remainderman, the decedent's daughter, then why could not the value of the remainder in another case be determined by more or less simple computation. In the *Mancuso* case it could unquestionably be argued that the sum which the remainderman would ultimately receive was uncertain, yet it was certain enough for the court to declare the entire estate exempt of taxation. To reach the conclusion here that there should be an exemption to the remainderman requires but an extension of the *Mancuso* rule, involving a little computation.

The Court of Appeals, in *Matter of Cregan* (275 N. Y. 337), has gone far toward clarifying the allowance of exemptions to remaindermen, wherein it was held " that exemption must be allowed under the plain language of the statute for the ' value ' of any estate, whether in possession or expectant, when that ' value ' can be determined with reasonable certainty upon the basis of known data; and that the value of an expectant estate dependent only upon the contingency of survivorship can be so determined."

In these uncertain times we ascribe value to property and rights, both present and expectant, and to quote from *Ithaca Trust Co.* v. *United States* (279 U. S. 151): " Like all values, as the word is used by the law, it depends largely on more or less certain prophecies of the future; and the value is no less real at that time if later the prophecy turns out false than when it comes out true."

In the *Ithaca Trust Company* case the question arose with respect to the exempt:on of certain remainders to charity fo'lowing a life estate to the testator's wife with authority to use from the principal any sum that might be necessary to suitably maintain her in as much comfort as she was accustomed to enjoy. It was held that as the use of the principal was limited to maintenance and support " The standard was fixed in fact and capable of being stated in definite terms of money," and that as the income from the estate was more than sufficient to maintain the widow as required " There was no uncerta'nty appreciably greater than the general uncertainty that attends human affairs."

*First National Bank* v. *Snead* (24 F. [2d 186) involved the situation of bequests to charitable institutions subject to an allowance for the proper support of the widow out of the corpus in the event the income from the trust estate should not be sufficient for the proper support of the wife, and it was held that the value of the contingency was reasonably ascertainable and the deduction was allowed. In that case the court said: " From the allegations of the complaint as to the value of the estate, the remainder interest in which was given to, and vested in, the named charitable institutions, as to the income from that estate, as to the value of the separate estate of the widow and the income therefrom, as to her age, disposition, and habits of life, and as to the amount of income required for her comfortable maintenance in the way chosen by herself, it well may be inferred that it is barely possible, but wholly improbable, that at any time any sum in addition to the net income from the trust estate will, in the opinion of any reasonable person acting in good faith, be, or seeem to be, necessary or desirable to be paid to her for her proper support and comfort. * * * For estate tax purposes the approximate amount of that value was ascertainable, and was allowable as a deduction from the testator's gross estate."

*Lucas* v. *Mercantile Trust Co.* (43 F. [2d] 39) concerned a bequest to a charitable institution contingent upon the use of a sufficient portion to maintain the wife in a manner necessary for her comfort and maintenance during her life, and with respect to the claim of uncertainty, the court said: " Under the decision of the Supreme Court in *Ithaca Trust Co.* v. *United States* (*supra*) the provision for

the maintenance of the wife did not make the ' gifts to charity so uncertain that the deduction of the amount of those gifts from the gross estate under section 403 (a) (3) of the Revenue Act of 1921 (42 Stat. 227) in order to ascertain the estate tax cannot be allowed.' "

*Farrington* v. *Commissioner of Internal Revenue* (30 F. [2d] 915) and *Delaware Trust Co.* v. *Handy* (53 id. 1042) involved uncertainties presently incapable of solution by known methods

Regardless of the trend elsewhere, it is still the law in New York that the doubt in tax cases should be resolved in the taxpayer's favor. (*Matter of Cohen*, 270 N. Y. 383; *Matter of Vassar*, 127 id. 1; *People ex rel. Metropolitan Playhouses, Inc.,* v. *Graves,* 251 App. Div. 655; affd., 275 N. Y. 621; *Matter of Litter*, 171 Misc. 803; *Matter of McAlpin*, 166 id. 333.)

The proof submitted of the income to be received by the widow from the estate residue and of her habits and cost of living being undisputed, the court finds that the widow's support and maintenance involved an expenditure of $1,000 annually, and that she is entitled to draw upon the corpus for the d fference between this sum and the estate income of $424.75 until she becomes sixty-five years of age, her age at the time of her husband's death having been sixty, and that from the age of sixty-five on during the rema nder of her life expectancy fixed by the mortal ty tables at 14.09 years, her withdrawals from the principal will be reduced by the sum of $31.20 per month, being the amount she may be expected to receive under the Federa Social Security Act. This computation will produce a sum which can now reasonably be said to be the rema nder which the son will receive. The present value of that sum as of the date of decedent's death will be taken as the basis for an allowance of an exemption. In making the computation it may be noted in passing that as the principal is encroached upon the estate's income successively becomes smaller. The attorney for the estate will be directed to prepare a computation in accordance with this opinion, and an order may be entered thereon upon agreement of the Tax Appraiser with the computation; otherwise the surrogate will make the computation.