In the Matter of the Estate of THOMAS J. DOWLING, Deceased.

Surrogate's Court, Queens County, April 5, 1948.

*Fred M. Ahern* for State Tax Commission, respondent.

*Thomas T. McVann* for Claire H. Dowling and another, apppellants.

SAVARESE, S. The executrices appeal from the *pro forma* order fixing the tax upon the appraiser's report. Review is sought upon the ground that the appraiser failed to allow an exemption of $20,000 to the widow and an exemption of $5,000 to each of testator's four minor children. Testator died June 25, 1946. He disposed of his net residuary estate, amounting to $47,213.20, by his will, as follows: "SECOND: All the rest, residue and remainder of my estate, real, personal and mixed and wheresoever situated, I give to my Trustees hereinafter named and direct that they pay over to my wife the income thereof during her lifetime or until she remarries. My Trustees are also empowered to turn over to her any part of the principal

thereof which they in their sole discretion decide is necessary for her care or support. Upon her death or remarriage, I give, devise, and bequeath my entire estate to my children, Thomas, Robert, James and Mary Helen, absolutely and forever in fee, share and share alike.''

Section 249-q of the Tax Law provides for exemptions of $20,000 for '' The amount of the net estate * * * transferred to *and indefeasibly vested in* a husband or wife '' and exemptions of $5,000 each for '' The amount of the net estate * * * transferred to *and indefeasibly vested in* a lineal ancestor or descendant ''. (Italics supplied.) The italicized words were added by chapter 380 of the Laws of 1946, effective April 1, 1946.

Prior to this amendment, the primary inquiry in cases of this character was whether the '' amount * * * transferred to '' certain exempt individuals was readily ascertainable. If it was, then appropriate exemptions were permitted. (*Matter of Cregan,* 275 N. Y. 337.) The use of mortality experience tables to calculate the present value of life and remainder interests was allowed even where the remainders were '' estates in expectancy ''. In *Matter of Cregan* (*supra*) the remainders to testator's children were expressly contingent upon survivorship to the time of the life tenant's death. Yet the court held that exemptions were properly allowed each of them based on their life expectancy.

Where, in addition, a power to invade the corpus for the benefit of the life tenant was present, if it was limited to some ascertainable standard, such as the amount needed for the care or support of the life tenant, whether with or without reference to the life beneficiary's private resources (*Matter of Martin,* 269 N. Y. 305), the values of the life and remainder interests might still be accurately estimated by reference to the economic habits of the life tenant in addition to his life expectancy. (*Matter of Birdsall,* 176 Misc. 619; *Ithaca Trust Co.* v. *United States,* 279 U. S. 151.) Even to this there was some dissent, however. (*Matter of Stroh,* 171 Misc. 681.)

On the other hand, most courts have been reluctant to attempt valuation of a life estate where it is terminable upon the remarriage of the life tenant, either by reference to actuarial tables or to the actual facts in the case in hand. (*Matter of Rothfeld,* 163 Misc. 11, 14; *Matter of Campanari,* 188 Misc. 666; *Humes* v. *United States,* 276 U. S. 487, 493.) These cases did not depend on whether the interests affected by the possibility of remarriage were thereby rendered contingent, vested, contingently vested,

or vested subject to being divested, but merely upon whether such interests could be adequately valued. In *Matter of Baumiller* (155 Misc. 815) cited by the appellants such remainders were held to be "vested", but that is not determinative of the question whether the value of such "vested remainders" could be fairly calculated. In *Commissioner of Internal Revenue* v. *Maresi* (156 F. 2d 929), deduction of the estimated value of a claim against a decedent's estate under clause (3) of subdivision (b) of section 812 of the Internal Revenue Code (U. S. Code, tit. 26, § 812, subd. [b], cl. [3]) was permitted where the claim consisted of payments due the widow under a separation agreement until her death or remarriage. The expectancy of continued celibacy of the widow was calculated from actuarial tables prepared by the Casualty Actuarial Society of America based upon American experience as to widows entitled to benefits under the workmen's compensation act. (See, also, *Matter of Luke*, 75 N. Y. S. 2d 572.) In the *Campanari* case (*supra*), the estate did not attempt to introduce actuarial tables, but relied on the actual receipt by the husband of sums in excess of the allowable exemption and an offer by the husband to sign a statement that it was his intention not to marry for a specified time. The court refused to consider the actual facts because the life tenant's estate must be capable of valuation on the date of decedent's death.

Notice must be taken by the court of chapter 848 of the Laws of 1947, which added a new article 80-A to the Civil Practice Act, relating to the valuation of certain property interests including those defeasible upon remarriage. Section 1334 of the Civil Practice Act, added by the above enactment, is not applicable to this proceeding for several reasons. First, the new article is applicable only to the valuation of interests in *real* property, and this estate consists of personalty. Second, by its terms the new article is not applicable to proceedings pending prior to its effective date, and this proceeding was "pending" prior to April 14, 1947. But even if this statute were applicable, or indicated a change in our State policy in favor of permitting valuation of life interests defeasible upon remarriage, the problem of valuation is now posterior to a preliminary issue, *viz.*, are the interests created by the will "indefeasibly vested" at the date of the decedent's death? If they are, then, and only then, may we inquire into the "amount" that has so vested.

Assuming, then, without deciding, that the present value of the gift of income and principal to the widow, and of the remainder to the four children can be accurately estimated by the use of

mortality and remarriage experience tables, and by reference to the widow's living habits to determine the sums she will need for her care or support from the principal, the result must be that no exemptions are allowable. This is so, not because the values cannot be estimated or calculated, but because the interests are not "indefeasibly vested". No other interpretation of the amendment to section 249-q of the Tax Law seems possible.

The interests here given are not indefeasibly vested. The widow's life estate is defeasible in the event of her remarriage, while the children's remainders are defeasible in whole or in part by the trustees' power of invasion for the support or care of the widow. Surely the fact that an interest in property has a calculable or even a fair market value does not make the interest indefeasibly vested.

The Legislature apparently desired to overcome the result of the *Cregan* case (*supra*) so that no exemptions may be permitted where the interests are contingent, contingently vested, or vested subject to being divested, but only where "indefeasibly vested". (See *Douglass* v. *Lewis*, 131 U. S. 75, 85.)

It is urged that since the entire estate is to pass to persons entitled to exemptions, although the exact amounts are uncertain, $40,000 or at least $20,000 should be regarded as exempt. This argument is based on the case of *Matter of Mancuso* (170 Misc. 298), and finds some support in *Matter of Walsh* (189 Misc. 350.) In both cases there was a life estate and a remainder, with a power of invasion for the life tenant's benefit. In the *Mancuso* case (*supra*) the power was restricted as necessary for his support and maintenance; in the *Walsh* case (*supra*) the power was merely as the life tenant might "desire". In both cases the entire estate could never pass to any but persons entitled to exemptions and in amounts less than their respective statutory exemptions. The *Mancuso* case was decided before the 1946 amendment, and may, therefore, be justified on the basis of the fact that exemptions were allowable for the "amount" of property "transferred to" exempt individuals. Since the "amount" could be estimated and in fact a ceiling lower than the exemption was established, no reason appeared for denying the exemptions. In the *Walsh* case, however, decedent died September 21, 1946, after the effective date of the amendment. The court described the remainders in the two children as "indefeasibly vested" despite the life tenant's virtually uncontrolled power of invasion. While it is true, as the court says (p. 352), that "The power to invade does not affect the vesting of the estate in the sons", the power to invade does affect the

defeasibility of the vested remainders. This was apparently not the sole ground of the court's decision, however, as it stated that "Under no circumstances or interpretation of testator's will could an amount in excess of the statutory exemption of $20,000 pass to the widow or an amount in excess of the statutory exemption of $5,000 pass to either son." In the instant case, it is clear that this is not so. It is entirely possible for the widow to receive more than $20,000 or for the four children to receive more than $5,000 each.

In the *Walsh* case (*supra*) the court said at page 352 " It is the opinion of the court that the Legislature, when in 1946, it added the words ' and indefeasibly vested in ', intended to reach that class of cases or situations where the exemption would, by reason of contingencies provided for in the will, inure to the benefit of persons not entitled to an exemption or increase the benefits accruing to individuals entitled to an exemption to an amount in excess of the exemption." This is tantamount to saying that as long as a certain amount is to pass within a group entitled to exemptions in amounts not greater than the total allowable individual exemptions, that amount is exempt, even though the proportions in which the beneficiaries will ultimately take are uncertain because of contingencies provided for in the will. In my opinion the statute does not say this. It provides for exemptions on an individual, not a group, basis. Each gift and each person must qualify separately for the exemption, and if a gift is not indefeasibly vested in a particular person entitled to an exemption, none is allowed. The statutory test is now whether the interest " transferred to " an exempt individual is " indefeasibly vested ". If that test is not met, the problem of valuation becomes academic. Since it is not met here, the appeal is overruled and the *pro forma* order is affirmed.