In the Matter of the Estate of CHARLES L. BEHM, Deceased.

Surrogate's Court, Onondaga County, August 2, 1962.

*M. Leonard Shapero* for New York State Tax Commission. *Clarence Z. Spriggs* for executor.

LAURENCE D. WOOD, S. The State Tax Commission has appealed from the order of this court fixing the tax on the above estate on the basis of the report of the appraiser. The appeal requests that certain United States Government Bonds, valued in the appraisal at the market value as of the date of death, should be valued at par value rather than market value. These United States Treasury Bonds were allowed credit at par toward payment of the United States estate tax pursuant to section 2031 of the Internal Revenue Code of 1954 (U. S. Code, tit. 26, § 2031).

This section in its pertinent part reads as follows:

" § 2031. Definition of gross estate.

" (a) General. The value of the gross estate of the decedent shall be determined by including to the extent provided for in this part, the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States."

A second Federal statute concerned with the acceptance at par of various Government securities is as follows:

" § 6312. Payment by United States notes and certificates of indebtedness.

" (a) General Rule. It shall be lawful for the Secretary or his delegate to receive, *at par* with an adjustment for accrued interest, Treasury bills, notes and certificates of indebtedness issued by the United States in payment of any internal revenue taxes, or in payment for internal revenue stamps, to the extent and under the conditions provided in regulations prescribed by the Secretary or his delegate." (Italics added.) (Eff. Jan. 1, 1955, see ch. 80, § 7851, subds. [a], [b]; subch. B of Internal Revenue Code of 1954; 68A U. S. Stat. 919.)

The pertinent United States Treasury Regulation is section 81.10 of regulation 105 (Code Fed. Reg., tit. 26, § 81.10) which in its pertinent parts reads as follows:

" (a) General. The value of every item of property includible in the gross estate is the fair market value thereof at the time of the decedent's death * * * The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell. * * * *All relevant facts and elements of value as of the applicable valuation date should be considered in every case.* * * * (Italics added.)

" (c) Stocks and bonds. (1) The value of stocks and bonds, within the meaning of the Internal Revenue Code, is the fair market value per share or bond on the applicable valuation date. * * *

" (6) If actual sales or bona fide bid and asked prices are not available, then, in the case of corporate or other bonds, the value is to be arrived at by giving consideration to the soundness of the security, the interest yield, the date of maturity, *and other relevant factors* * * * (Italics added).

" (7) In cases in which it is established that the value per bond or share of any security determined on the basis of selling or bid and asked prices as provided in this paragraph does not reflect the fair market value thereof, *then some reasonable modification of such basis or other relevant facts and elements*

*of value shall be considered in determining fair market value.''*
(Italics added.)

The above section 81.10 of regulation 105 was construed by the Treasury in Revenue Ruling No. 156 (United States Int. Rev. Bull. 1952–53, p. 253) under section 811 of the 1939 Internal Revenue Code, which held that to the extent marketable United States Treasury Bonds owned by a decedent at death might be applied at par in payment of Federal estate taxes the par value thereof or the mean between their highest and lowest quoted selling price at the time of his death (and accrued interest to the date of death) whichever is higher, constituted the value at which said bonds were in his gross estate for Federal estate tax purposes. As to bonds in excess of the amount which may be so applied, such mean quoted price thereof (and accrued interest to the date of death) would be the value at which they are includible in the decedent's gross estate for Federal estate tax purposes.

Executive Order 10574 (§ 2) of November 5, 1954 (Fed. Reg. 7249 [Nov. 9, 1954]) provides as follows: '' Any reference in any regulation or other Executive document issued or approved by the President to any provision of the Internal Revenue Code of 1939 shall, except as may be inconsistent with the Internal Revenue Code of 1954 or otherwise inappropriate, be deemed also to refer to the corresponding provisions of the Internal Revenue Code of 1954.''

It thus appears that section 81.10 of regulation 105 is an effective regulation under the 1954 code.

In *Bankers Trust Co.* v. *United States* (284 F. 2d 537, cert. denied 366 U. S. 903) the United States Court of Appeals for the Second Circuit reversed a decision of the United States District Court reported (178 F. Supp. 267), where the lower court held that bonds accepted or acceptable at par value in payment of the Federal estate tax should be valued at their lower market value in determining the estate tax.

The United States Court of Appeals disagreed with the lower court holding that the logical application of the regulations entitled the plaintiff to value the bonds at their market value on the date of decedent's death, stating (p. 538): '' To so hold disregards, in our opinion, the provision in paragraph (a) that ' All relevant facts and elements of value as of the applicable valuation date should be considered *in every case*' [italics added], and also disregards subdivisions 6 and 7 of paragraph (c) ''.

There the United States Court of Appeals also swept aside the contention that it would be impracticable to differentiate

between estates in one of which all bonds could have been so applied and another in which none or only some of the bonds could be so used, stating that (p. 538): "Where the bonds cannot be so used, their value to the estate is their market price, whether that be below or above par; where they can be so used, their value is at least par".

While the *Bankers Trust Co.* case came up under the similar provisions of section 811 of the 1939 code, a recent case in the Court of Appeals for the Fifth Circuit has affirmed a holding of the District Court for the Northern District of Georgia under the 1954 Internal Revenue Code holding that Government bonds applied at par toward the payment of tax must be valued at par rather than their lower market value in determining the amount of the Federal estate tax. (*Candler* v. *United States*, 303 F. 2d 439.)

It is to be noted that the Federal statutes and regulations provide for acceptance of the bonds at par in payment of the tax, and that the Federal regulation provides that: "All relevant facts and elements of value as of the applicable valuation date should be considered in every case", and further provides for "some reasonable modification of such basis or other relevant facts and elements of value shall be considered in determining fair market value."

The brief on behalf of the State Tax Commission cites the first portion of section 249-r of the State Tax Law as the sole support for its position on value, and states that no State regulation is relied upon. The pertinent part of section 249-r is as follows:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated (except real property situated and tangible personal property having an actual situs outside this state):

"1. To the extent of the interest therein of the decedent at the time of his death".

The appellants' brief relies upon the similarity of section 249-r to section 2031 of the Internal Revenue Code of 1954, and its similar predecessor section 811 of the Internal Revenue Code of 1939 stressing that since the adoption of article 10-c of the Tax Law, the courts of this State have consistently followed the policy of conforming interpretations under that law with the interpretations reached by the Federal Government so as to achieve that uniformity which was one of the purposes of enacting an estate tax law modeled on the Federal law.

In determining the effect of provisions of the New York Tax Law, weight should be given to the construction placed upon *analogous provisions* in the Federal statute " for the purpose of maintaining the uniformity of administration of the Tax Law which the Legislature has sought to achieve ". (*Matter of Weiden,* 263 N. Y. 107, 110; *Matter of Cregan,* 275 N. Y. 337, 341; *Matter of Russell,* 294 N. Y. 99, 103; *Matter of Rogers,* 296 N. Y. 676, 679.)

This " Rule " or " Doctrine " — if such it may be called, is simply an acknowledgment by the courts of their inclination and disposition to be guided — in the interest of uniformity — by the Supreme Court decisions construing the Federal statute. There is nothing of compulsion in the rule, nothing which demands conformity, rather the rule should be regarded merely as a sign post, though a persuasive one. (*Matter of Rogers,* 296 N. Y. 676, 678 [dissenting opinion].)

Webster's Third New International Dictionary defines the word analogous used in the " rule " or " doctrine " as follows:

" 1. showing an analogy for a likeness permitting one to draw an analogy: susceptible of comparison either in general or in some specific detail."

An analogy in turn is defined in its use here as:

" 2a: similarity of ratios or of properties

" b: inference that if two or more things agree with one another in one or more respects they will probably agree in yet other respects

" 3: resemblance in some particulars between things otherwise unlike ".

At the outset, we must note that there is, of course, no opportunity to turn the bonds in at par toward the payment of the New York State estate tax, although there is a marked similarity between section 2031 of the Internal Revenue Code and section 249-r of the Tax Law of the State of New York in the pertinent portions of those statutes.

It is however, section 6312 (U. S. Code, tit. 26) Treasury Department Circular No. 300, Revised April 30, 1955 (CCH Estate & Gift Tax Reporter, p. 4220) page 5199 and Treasury Department Circular 956 that implements the acceptance at par for payment of Federal estate taxes and the consequent power to tax at par.

It is conceded that no equivalent or analogous procedure to implement the State statute exists and it may well be doubted that a similar provision will ever be made, since the bonds are Federal not State and the allowance for tax payment at a premium above the market value would seem most impractical

merely to enlarge the tax basis of such bonds for State estate tax purposes. There is no allegation of similar treatment of State bonds by the State.

We are thus left to decide whether the privilege accorded by the Federal Government and its valuation on the basis of the according of such privilege is a basis for taxation by the State at a value above market.

The instructions on both Form 706, page 8, United States Estate Tax Return and page 2 of the New York State Return and Schedules appear almost identical in their pertinent part as follows:

" Schedule B — Stocks and Bonds

&ast; &ast; &ast;

" Valuation &ast; &ast; &ast;

"In the case of stocks and bonds which are not listed upon an exchange, but are dealt in through brokers or have a market, the fair market value shall be determined by taking the mean between the highest and lowest selling prices as of the date of death; (valuation data on Federal Form) or if there were no sales on that date, such value shall be determined by taking the mean between the highest and lowest sales on the nearest date before and the nearest date after the date of death (Federal: valuation date) (both such nearest dates being within a reasonable period), and by prorating the difference between such mean prices to the date of death, (valuation date) and by adding or subtracting, as the case may be, such prorated portion of the difference to or from the mean price obtaining on such nearest date before the date of death ".

This court feels that until the State adopts some statute rule or regulation either providing for a credit on such bonds at par toward payment of the State estate tax, or more practically, including somewhere in the controlling statute, regulation or instructions an equivalent direction that " other relevant facts and elements of value " of any bond or share of any security other than selling or bid and asked prices should be taken into consideration in determining fair market value and modifying base where selling or bid and asked prices do not reflect same, the securities should be taxable according to the prescribed market values.

In the absence of such provision, this court is not prepared to broaden the State statute to encompass taxation of these securities at par where there is absence of the provisions of section 6312 of the Internal Revenue Code (U. S. Code, tit. 26) or of Treasury Department Circular 300 (*supra*) and of regulations

equivalent to Treasury section 81.10 of regulation 105 and where it is further indicated that the State taxes its own bonds at market rather than at par, granting no right to submit State bonds at par for State estate tax payments. To rule that the State may likewise tax these bonds at par without giving credit at par is to reduce the benefit of owning such bonds by the amount of the tax and to thus in some measure lower the market value of such Federal securities which may be bought and sold in consideration of the redemption at par privilege for payment of Federal estate taxes.

I do not feel that the rule or doctrine of conformity may be stretched to bridge the different facts and law as set forth above and allow the State to tax the Federal bonds on the basis of the Federally accorded privilege in the absence of fully equivalent legislation the practicability of which might be doubtful, or before less equivalent legislation may be more clearly defined by some legislative or administrative standard.

The United States Government Bonds were properly set forth and taxed at their market value, and the taxing order is affirmed.