In the Matter of the Estate of LISA W. SANDFORD, Deceased.

STATE TAX COMMISSION, Appellant.

JAMES C. WEBSTER et al., as Executors of LISA W. SANDFORD, Deceased, Respondents.

Argued January 4, 1938; decided March 8, 1938.

*Mortimer M. Kassell* and *Harry T. O'Brien, Jr.*, for appellant. A State can validly tax the transfer by the exercise of a power of appointment when the property passing under such exercise has a tax situs therein at the time of the exercise. (*Frick* v. *Pennsylvania*, 268 U. S. 473; *Chanler* v. *Kelsey*, 205 U. S. 466; *Matter of Delano*, 176 N. Y. 486; *Matter of Fearing*, 138 App. Div. 881; 200 N. Y. 340; *Matter of Kissel*, 65 Misc. Rep. 443; 142 App. Div. 934; *Matter of Brett*, 123 Misc. Rep. 507; 206 App. Div. 746; *Matter of Palmer*, 214 App. Div. 705; *Matter of Putnam*, 127 Misc. Rep. 799; 220 App. Div. 34; *Matter of Canda*, 197 App. Div. 597; *Matter of Thomas*, 39 Misc. Rep. 136; *Wachovia Bank & Tr. Co.* v. *Doughton*, 272 U. S. 567; *Clark* v. *Treasurer & Receiver General*, 218 Mass. 292; *Matter of Bowditch*, 189 Cal. 377.) The securities in the fund passing under the exercise of the

power of appointment by the decedent herein had a tax situs in this State at the time of the exercise, and the value of such securities is includible in her gross estate. (*Farmers Loan & Trust Co.* v. *Minnesota*, 280 U. S. 204; *Baldwin* v. *Missouri*, 281 U. S. 586; *Beidler* v. *South Carolina Tax Comm.*, 282 U. S. 1; *First Nat. Bank* v. *Maine*, 284 U. S. 312; *Safe Deposit & Trust Co.* v. *Virginia*, 280 U. S. 83; *Matter of Brown*, 274 N. Y. 10; *Brooke* v. *Norfolk*, 277 U. S. 27; *Matter of Lord*, 111 App. Div. 152; 186 N. Y. 549; *Mayor* v. *Gibbs*, 166 Md. 364; 293 U. S. 559; *Johnston* v. *State*, 8 N. E. Rep. [2d] 590; *Virginia* v. *Appalachian Elec. Power Co.*, 159 Va. 462; 288 U. S. 613.) The value of the securities remaining in the 1929 trust at the date of the decedent's death is includible in her gross estate. (*Porter* v. *Commissioner of Internal Revenue*, 288 U. S. 436; *Commissioner of Internal Revenue* v. *Chase Nat. Bank*, 82 Fed. Rep. [2d] 157; *Commissioner of Internal Revenue* v. *Erickson*, 74 Fed. Rep. [2d] 327; 294 U. S. 730; *Hoblitzelle* v. *United States*, 3 Fed. Supp. 331; *Reinecke* v. *Smith*, 289 U. S. 172; *Helvering* v. *City Bank Farmers Trust Co.*, 296 U. S. 85.)

*James C. Webster* for respondents. The property in the Winchester trust, passing under decedent's exercise of a power of appointment, is not taxable. (*Matter of Harbeck*, 161 N. Y. 211; *Matter of Rogers*, 249 App. Div. 238; *Matter of Burch*, 160 Misc. Rep. 342; *Farmers Loan & Trust Co.* v. *Minnesota*, 280 U. S. 204; *Blodgett* v. *Silberman*, 277 U. S. 1; *First Nat. Bank* v. *Maine*, 284 U. S. 312; *Baldwin* v. *Missouri*, 281 U. S. 586.) The value of the property remaining at decedent's death in the *inter vivos* trust created by decedent on December 31, 1929, was properly excluded from the gross estate. (*Matter of Barstow*, 230 App. Div. 371; *Coolidge* v. *Long*, 282 U. S. 582; *Nichols* v. *Coolidge*, 274 U. S. 531; *May* v. *Heiner*, 281 U. S. 238; *Burnet* v. *Northern Trust Co.*, 283 U. S. 782; *Morsman* v. *Burnett*, 283 U. S. 783; *McCormick* v. *Burnett*, 283 U. S. 784.)

O'BRIEN, J.   The testatrix, Lisa W. Sandford, who died February 7, 1934, was the daughter of Thomas B. Winchester, a resident of Massachusetts, whose will was probated in that Commonwealth in March, 1904.   By his will Mr. Winchester established a trust in favor of this testatrix, among others, with power of. appointment by her in her will of the beneficiary of the principal. By the seventh paragraph of Mrs. Sandford's will, executed June 30, 1932, and the codicil, executed September 1, 1933, she exercised this power in favor of ten individuals and one charitable institution.

The first issue presented by appellant, State Tax Commission, is whether the value of the securities in the Winchester trust should be included in the gross estate of Lisa W. Sandford and whether the transfer, by the exercise of her power of appointment, is taxable in this State.   The record discloses the fact that the original trustees of the testamentary Winchester trust were both residents of Massachusetts, and that after the death of one of them the other continued to act as sole surviving trustee until his death in January, 1933. During all that time the securities, comprising the *corpus* of the trust, were held by the trustees in Massachusetts. After the death of the surviving trustee the Probate Court of Suffolk county, Massachusetts, in April, 1933, appointed, as substitute trustees, two residents of New York, who are still acting.   For twenty-nine years, until shortly after the appointment of the New York residents as trustees, *all* the securities comprising the trust were held in Massachusetts, but since April or May, 1933, the *greater part* have been held in New York.   This testatrix died in February, 1934.   The Winchester trust was created by a Massachusetts resident, the trustees are subject to the control of the Probate Court of that State, and all the securities constituting the *corpus* had an actual situs there except for one year prior to the death of the donee of the power and at present have at

least a constructive situs there. The trustees' obligation is to account to the Massachusetts court. The actual presence in this State of the certificates or instruments evidencing the intangible property did not afford a basis for taxation. Neither did the removal of the residence of the trustee into this State afford a basis for the imposition of a tax. The transfer of the securities in the trust by the exercise of this power of appointment is not taxable in this State. (*Wachovia Bank & Trust Co.* v. *Doughton,* 272 U. S. 567.)

The second issue presented by appellant, State Tax Commission, is whether the value of the securities remaining in the 1929 *inter vivos trust* at the date of the death of testatrix should be included in her gross estate. Under date of December 31, 1929, testatrix and Guaranty Trust Company executed a trust agreement whereby she transferred certain designated property to the trustee. It provides that upon her death the trustee should pay over to her adopted son, Baronig Baron, the principal of the trust fund with accrued interest. It also provides: " 4. The Trustee may make such payments out of the principal as the Grantor may request from time to time, provided, however, that *the aggregate of such withdrawals shall not at any time exceed fifty per cent (50%) of the total* of the original amount of securities and properties placed in trust by her plus any additional amounts thereafter added to the principal of the trust fund. 5. The Trustee may also make such payments out of the principal as the Grantor may request for illness and emergency and any other unusual expenses." On July 12, 1932, the grantor exercised her right to withdraw fifty per cent of the securities, and on that date a new trust indenture was executed by her and Baronig Baron, as trustee. By this new trust agreement reference is made to the indenture of December 31, 1929, and Baronig Baron is named as trustee as well as remainderman. The value of the securities in the new trust created July 12, 1932, was approximately $32,000. It recites the desire of the

testatrix to withdraw from the trust fund then held by the Guaranty Trust Company as trustee "fifty (50%) per cent of the entire said trust fund * * * for the purpose of continuing the said trust fund as to the said fifty (50%) per cent under the substituted trusteeship of Baronig Baron * * * amending the said instrument [the indenture of December 31, 1929] as to substitute Baronig Baron the trustee as to the said fifty (50%) per cent thereof."

The appraiser included in decedent's gross estate the sum of $72,317.02, the value of the securities in the trust of December 31, 1929. Of this amount, $40,499.22 is the value of the securities remaining in the original trust on the day of decedent's death, and $31,817.80, the value of the securities in the hands of the trustee named on July 12, 1932. The order of the Surrogate excluded from the gross estate the value of the securities in the original trust of December 31, 1929, at decedent's death, but included the value of the securities in the trust created July 12, 1932.

The question is whether the $40,499.22, the value of the property remaining at decedent's death in the trust of December 31, 1929, was properly excluded from the gross estate. The Surrogate and the Appellate Division have held that the securities that remained at the time of decedent's death in the original trust of December 31, 1929, are not includible in the gross estate. The theory of the respondent executors is that when, on July 12, 1932, the testatrix transferred fifty per cent of the securities from the trusteeship of the Guaranty Trust Company to Baronig Baron, she had no power to revoke as to the balance and had no rights in respect to the remaining fifty per cent except to receive the income. The appellant Tax Commission argues that the additional power vested by paragraph 5 in the trustee at the grantor's request to make other payments out of the principal constitutes an absolute power to recall, that *the grantor could withdraw the entire*

*corpus*, in addition to the fifty per cent, and use it for illness, emergency and other unusual expenses. Respondents answer this argument by reference to certain recitations in the new trust indenture of July 12, 1932, which, as they argue, indicates a clear intent by the grantor that no more than fifty per cent of the *corpus* of the original trust could ever be withdrawn. These are the recitations in the agreement of July 12, 1932, in respect to the agreement of December 31, 1929, upon which respondents rely: " Whereas, the said Lisa Winchester Sandford had *the power* under the said trust agreement *to withdraw up to fifty (50%) per cent* of the original amount of securities and properties placed in trust; and Whereas, it is the desire of the said Lisa Winchester Sandford to *withdraw* out of the aforementioned trust fund now held by Guaranty Trust Company of New York as trustee *fifty (50%) per cent* of the entire said trust fund, according to the market valuation of the securities contained therein as of July 7, 1932, for the purpose of *continuing the said trust as to the said fifty (50%) per cent* under the substituted trusteeship of Baronig Baron for the better management and simpler access by the grantor, party of the first part, to the said portion of the said fund, *not taking away from the said fund or from the said trust any of the provisions created in the said trust indenture of the 31st day of December, 1929.*" The powers granted to the trustee, Baronig Baron, under the new agreement in reference to the fund set up under this agreement of July 12, 1932, are far more extensive than the powers vested in the trustee, Guaranty Trust Company, under the original trust agreement of December 31, 1929. Under the new agreement the trustee, by paragraph 9, could withdraw the entire *corpus* and was not required to render any accounting. There is no evidence that more than fifty per cent of the original trust fund of December 31, 1929, was ever withdrawn or that any effort was made or that there was ever any inclination to do so. If any ambiguity arises

by reason of an apparent conflict between paragraph 4 and paragraph 5 of the agreement of December 31, 1929, the practical construction given to that instrument by the parties during the years 1930 and 1931 up to July 12, 1932, would be quite persuasive in ascertaining intent. The trust of December 31, 1929, may, therefore, be interpreted as irrevocable up to fifty per cent of the *corpus*. The Surrogate and the Appellate Division are correct when they hold that the provisions of section 249-r (subd. 3) of the Tax Law, as added by chapter 710 of the Laws of 1930 and amended by chapter 62 of the Laws of 1931, are not retroactive as to a trust created prior to its enactment. (*Nichols* v. *Coolidge*, 274 U. S. 531; *May* v. *Heiner*, 281 U. S. 238; *Coolidge* v. *Long*, 282 U. S. 582.)

The order appealed from should be modified in accordance with the prevailing opinion in *Matter of Duryea* (277 N. Y. 310), decided herewith, by striking from said order the following provision: " It is hereby unanimously ordered and adjudged that the order so appealed from be and the same hereby is modified by providing that any and all estate taxes assessed and payable (1) on the value of the principal of the *inter vivos* trust created by Ellen W. Duryea, deceased, on June 2, 1923, with income therefrom for life to decedent herein, and over the *corpus* of which trust the said Ellen W. Duryea gave this decedent a power of appointment by will, and any and all estate taxes assessed and payable (2) on the value of the principal of the trust created under the will of said Ellen W. Duryea, deceased, with income therefrom to decedent herein for life, and over the corpus of which trust the said Ellen W. Duryea gave this decedent a power of appointment by will, shall be paid by Robert H. Heighe, residuary legatee of said Ellen W. Duryea, and shall not be paid by the Executors of the decedent herein, nor by the appointees of said trusts, said Robert H. Heighe to pay such proportion of the estate taxes herein as the amount of the value at the date of this decedent's death of the principal of

said two trusts, namely, the sum of Three hundred Fifty-four thousand, one hundred fifteen and 33/100 Dollars ($354,115.33), bears to the total gross taxable estate herein," and, as so modified, affirmed, with costs.

CRANE, Ch. J., LEHMAN, LOUGHRAN, FINCH and RIPPEY, JJ., concur; HUBBS, J., taking no part.

Ordered accordingly.