In the Matter of the Estate of JAMES G. HARBORD, Deceased.

Surrogate's Court, Westchester County, April 30, 1951.

*Monroe Collenburg, John A. Gifford, Irving I. Goldsmith* and *Hugh L. Thomson* for Bankers Trust Company and another, as executors of James G. Harbord, deceased, appellants.

*Hamilton McInnes* for State Tax Commission.·

GRIFFITHS, S. This is an appeal by the executors from a *pro forma* order fixing the estate tax on the report of the appraiser. The executors contend that the appraiser committed error by including in the decedent's gross taxable estate the assets of an *inter vivos* trust established by the decedent.

The facts are not in dispute. During his lifetime the decedent, as grantor, and Bankers Trust Company, as trustee, executed an irrevocable trust agreement bearing date August 15, 1930. Under the provisions of said agreement the net income was payable to Emma Harbord, then the wife of the decedent, during her life and upon her death such income was payable to the decedent during his life. Upon the death of the survivor of the decedent and his said wife the principal of the trust was distributable to various individuals, not including the decedent or his estate. The decedent did not reserve the right to revoke or amend the trust in any respect. Emma Harbord having predeceased the decedent, the latter was the sole income beneficiary of the trust at the time of his death, which occurred on August 20, 1947.

The appraiser filed his report in this office on June 27, 1950, and the order appealed from was made on the same date.

At the time of the inception of the trust on August 15, 1930, under New York law the taxability of property transmitted at death was governed by articles 10, 10-A and 10-B of the Tax Law, which legislation is known as the Transfer Tax Law. Said legislation was designed to impose a tax upon the privilege to *receive* property, the possession or enjoyment of which was intended to take effect at the death of the decedent. Under this legislation and comparable legislation from which it was derived, the courts of New York had uniformly held that *inter vivos* trusts containing reservations of income to the grantor were subject to the imposition of death taxes. (*Matter of Green,* 153 N. Y. 223; *Matter of Cornell,* 170 N. Y. 423; *Matter of Brandreth,* 169 N. Y. 437; *Matter of Keeney,* 194 N. Y. 281, affd.

*sub nom. Keeney* v. *Comptroller of State of New York,* 222 U. S. 525.) In holding that the assets of such trusts were properly includible in the gross taxable estate of the grantor the courts made a distinction between the vesting in *legal title* of a remainder interest and the vesting in possession of the property. (See *Matter of Brandreth, supra,* p. 442.) Resting its decision squarely on the possession or enjoyment provision of the then statute the court stated in the *Brandreth* case that whether the trust instrument contained a power to revoke was immaterial provided the gift took effect in possession and enjoyment at the date of death of the grantor.

By chapter 710 of the Laws of 1930, the Legislature added article 10-C to the Tax Law. This article substituted an estate tax, similar to the Federal statute, for the inheritance tax imposed by the earlier statute. (*Matter of Cregan,* 275 N. Y. 337, 341; *Matter of Ryle,* 161 Misc. 126, affd. 250 App. Div. 849, affd. 278 N. Y. 546.) The tax imposed under article 10-C is " upon the transfer of the net estate " and " 'comes into existence before and is independent of the receipt of the property by the legatee.' " (*Matter of Cregan, supra,* p. 341, quoting from *Edwards* v. *Slocum,* 264 U. S. 61, 62.) Said legislation was expressly made applicable only to persons dying after August 31, 1930. (Tax Law, § 249-mm, as amd. by L. 1935, ch. 499, eff. April 25, 1935.) This decedent having died in the year 1947, article 10-C is applicable.

Insofar as here pertinent the language of section 249-r of the New York statute as originally enacted in 1930, was a counterpart of subdivision (c) of section 302 of the Revenue Act of 1926 (44 U. S. Stat. 70) prior to its amendment in 1931. Both statutes required that there be included in the gross taxable estate the value of property " To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death ". While the New York statute became a law April 23, 1930, it did not become effective until September 1, 1930. On April 14, 1930, the United States Supreme Court handed down its decision in *May* v. *Heiner* (281 U. S. 238) holding that a transfer by the decedent in trust with a reservation of income to her and remainder to her children, their distributees or appointees, was not a gift " to take effect in possession or enjoyment at or after " her death within the meaning of subdivision (c) of section 402 of the Revenue Act of 1918 (40 U. S. Stat. 1097). Any

doubts as to the general application of this enunciation was completely dispelled by the three *Per Curiam* decisions decided by that court on March 2, 1931. (See *Burnet* v. *Northern Trust Co.*, 283 U. S. 782; *Morsman* v. *Burnet*, 283 U. S. 783, and *Mc-Cormick* v. *Burnet*, 283 U. S. 784.) These decisions made it clear that the court interpreted the "possession or enjoyment" provision to mean a transfer of *legal title* at the decedent's death and refused to extend its application to a present active possession or enjoyment. Because of the far-reaching adverse effect of said decisions on the revenues of the Federal Government the Treasury Department promptly requested the Congress to enact legislation to prevent such estate tax avoidance. In response thereto on March 3, 1931, subdivision (c) of section 302 of the Revenue Act of 1926 was amended by a Joint Resolution of the House and Senate requiring that there be included in a decedent's gross taxable estate all transfers which he made during his life, by trust or otherwise, under which he retained for his life: "(1) the possession or enjoyment of, or the income from, the property or (2) the right to designate the persons who shall possess or enjoy the property or the income therefrom". (46 U. S. Stat. 1516–1517.) Thereafter and on March 10, 1931, New York enacted a comparable amendment to section 249-r of article 10-C of the Tax Law which amendment became effective immediately. (L. 1931, ch. 62.) While the Federal legislation effectively prevented *future* transfers with reserved life estates to the grantor, the United States Supreme Court refused to apply it retroactively. (*Hassett* v. *Welch*, 303 U. S. 303.) Likewise, the New York courts held that the 1931 legislation of New York was prospective only and therefore refused to include in the gross taxable estate assets of irrevocable *inter vivos* trusts with reserved life estates to the donors made prior to March 10, 1931. (*Matter of Sandford*, 277 N. Y. 323; *Matter of Van Wagemen*, 170 Misc. 820, affd. 258 App. Div. 846, motion for leave to appeal denied 282 N. Y. 810.) Except for possible implications to the contrary to be found in the *Hallock* case decided in 1940 (*Helvering* v. *Hallock*, 309 U. S. 106) pre-1931 irrevocable trusts with reserved life estates to the donors thereafter remained immune from both Federal and New York estate tax imposts until the pronouncement of the United States Supreme Court in January, 1949, in *Commissioner of Internal Revenue* v. *Estate of Church* (335 U. S. 632.) The *Church* case involved an *inter vivos* trust made in 1924 by the decedent, a New York resident, in which he reserved the income for life

with remainder to his issue living at his death and contingent remainders to his brothers and sisters and their respective descendants. The grantor did not reserve the right to amend or revoke the trust. While the taxability of the trust fund by reason of a possible reverter interest retained by the grantor-decedent was an issue in the case, the court based its determination that the trust agreement was intended to take effect in possession or enjoyment at the grantor's death solely upon the fact that it contained a reservation of a life estate for his benefit. In so doing the court rejected the rationale of its decision in *May* v. *Heiner* (*supra*) that the transfer of the property interest was " complete " at the time the trust agreement became effective. Referring to its determination in *Hasset* v. *Welch* (*supra*) that subdivision (c) of section 302 of the Revenue Act of 1926, as amended by the Joint Resolution of Congress of March 3, 1931, and subdivision (a) of section 803 of the Revenue Act of 1932 (47 U. S. Stat. 279) were intended to be prospective only, the court stated that it would apply its interpretation of the " possession or enjoyment " provision of the statute as it stood *prior* to such amendments. In ruling that the trust fund was required to be included in the decedent's gross taxable estate, the court regarded the right to receive the income from the trust property reserved by the grantor as a " property right " which " passed " to the remaindermen upon the grantor's death. In so holding the court said at page 645: " Even if the interest of Church was merely ' obliterated,' in *May* v. *Heiner* language, it is beyond all doubt that simultaneously with his death, Church no longer owned the right to the income; the beneficiaries did. It had then ' passed.' It never had before. For the first time, the gift had become 'complete.' "

Yielding to the argument that the new interpretation of the statute presented in the *Church* decision (*supra*) would impose considerable hardship upon persons who had acted in reliance upon the *May* v. *Heiner* interpretation (*supra*), Congress enacted the so-called Technical Changes Act of 1949 (63 U. S. Stat. 894). Insofar as said legislation pertains to reserved life estates, it applies to trusts in existence at the time of its enactment which were created on or before March 3, 1931. The estates of persons creating such trusts who died before January 1, 1950, were exempted from the tax that otherwise would have been imposed by reason of the *Church* decision. To afford like relief to the estates of living persons, the statute further provides that for a limited period, not here pertinent, the relinquish-

ment or assignment of life estates reserved in such trusts would not constitute a transfer subject to gift tax or a transfer in contemplation of death. This decedent having died in the year 1947 the assets of the trust under consideration created by him were required to be included in his gross taxable estate under the *Church* decision and the court is informed the Federal estate tax was paid. Under the Technical Changes Act, however, it is represented that the total amount of the tax was refunded.

In accordance with its policy to conform New York estate tax legislation to that of the Federal, so far as practicable, the Legislature thereafter amended section 249-r of the Tax Law. (L. 1950, ch. 683.) Such legislation affords relief to estates similar to that contained in the Technical Changes Act except that its application is limited to estates of decedents dying after April 30, 1950. Section 3 of said statute reads in part as follows: " § 3. In the case of a transfer of property made prior to May eighth, nineteen hundred thirty-four, under which the grantor retained (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom, then an assignment by the grantor of such possession, enjoyment, or right to income, or a relinquishment by him of such right of designation, shall, if made prior to January first, nineteen hundred fifty-one, not be deemed to have been made in contemplation of death within the meaning of article ten-c of such chapter." After providing that the amendments made by section 2 of the statute (the addition of a new subdivision 3) shall be applicable with respect to estates of decedents dying after April 30, 1950, section 4 thereof further states that the provisions of such new subdivision " shall (except as otherwise specifically provided in such paragraph [subdivision]) apply to transfers made on, before, or after September first, nineteen hundred thirty."

The provisions of subdivision 3 of section 249-r of the Tax Law, as amended in 1950, with respect to transfers made with reserved life estates to the grantors, are identical with the comparable provision in old subdivision 3. It is urged, by appellants, therefore, that the interpretation of identical language made by the Court of Appeals in *Matter of Sandford* (*supra*) is controlling here. The disposition of such contention requires a consideration of the effect to be given by our courts to the interpretation of comparable Federal legislation by the

United States Supreme Court in the *Church* case (*supra*). It is the established legislative policy of the State to conform its estate tax law, so far as possible, to the provisions of the Federal estate tax law. (N. Y. Legis. Doc., 1930, No. 69, pp. 195, 206.) In determining, therefore, the effect of provisions of the New York estate tax law similar to those of the Federal estate tax law, it is the policy of our courts to give great weight to the Federal decisions construing comparable provisions of the Federal statutes. (*Matter of Cregan,* 275 N. Y. 337, 341, *supra*; *Matter of Weiden,* 263 N. Y. 107, 110; *Matter of Pratt,* 289 N. Y. 621; *Matter of Russell,* 294 N. Y. 99; *Matter of Newton,* 177 Misc. 877, 886, affd. 267 App. Div. 913, affd. 294 N. Y. 687; *Matter of Rogers,* 269 App. Div. 551, revg. 183 Misc. 1052, affd. 296 N. Y. 676.) The reason for such so-called rule or policy is to maintain " the uniformity of administration of the Tax Law (Cons. Laws, ch. 60) which the Legislature has sought to achieve." (*Matter of Weiden, supra,* p. 110.)

While such decisions of the Federal courts are not " binding " on the State courts, such policy does promote the Legislature's expressed intention to harmonize, so far as possible, the meaning and operation of the State and Federal estate tax statutes. In *Matter of Rogers* (*supra*) the Court of Appeals affirmed without opinion the decision of the Appellate Division, which followed the decision of the United States Supreme Court in the same estate (*Estate of Rogers* v. *Commissioner of Internal Revenue,* 320 U. S. 410 [1943]). There it was held that the estate was required to include in the gross taxable estate of the decedent certain property subject to his power of appointment. In so doing the Court of Appeals departed from the established New York rule to the contrary which culminated in *Matter of Duryea* (277 N. Y. 310 [1938]). JOHNSTON, J., writing for a unanimous court in the *Rogers* case (Appellate Division) stated at page 560: " I believe it is incumbent upon this court to follow the subsequent decision of the United States Supreme Court in the *Rogers* case, particularly since it was rendered in the same case and on the same facts."

In view of the established legislative policy of the State to conform our estate tax law to that of the Federal Government and the consistent determinations of our appellate courts to follow the decisions of the Federal courts construing comparable provisions of the Federal statutes, this court is constrained to adopt the interpretation enunciated in the *Church* case (*supra*). Accordingly it is held that the transfer in ques-

tion made on August 15, 1930, was intended to take effect in "possession or enjoyment" at the time of the decedent's death within the meaning of the provisions of subdivision 3 of section 249-r of the Tax Law in effect on August 20, 1947. While such determination is a repudiation of the decision in *Matter of Sandford* (*supra*) and other cases decided subsequent to *May* v. *Heiner* (*supra*), it is in accord with the reasoning and conclusions reached in *Matter of Green* (*supra*); *Matter of Cornell* (*supra*); *Matter of Brandreth* (*supra*), and *Matter of Keeney* (*supra*). Since the decisions in the *Sandford* and other New York cases refusing to tax pre-1931 trusts with reserved life estates were the direct result of the application of the *May* v. *Heiner* rationale, the repudiation of that decision by the United States Supreme Court requires a like repudiation by the New York courts.

Counsel for the executors further urge that to include the corpus of the trust in the decedent's gross taxable estate would require a retroactive and consequently unconstitutional application of the estate tax law. Such argument is necessarily predicated upon the assumption that in creating the trust on August 15, 1930, the decedent effected a "complete" transfer of the trust assets at that time and that the State now seeks to impose an estate tax by reason of a transfer made prior to the enactment of the present tax law. As has been heretofore stated, the estate tax law superseded the former inheritance tax law and is applicable to the estates of all decedents who die after August 31, 1930. It is undisputed that if the creation of the trust effected a "complete" transfer on August 15, 1930, within the meaning of section 249-r, the imposition of a tax under the estate tax law thereafter enacted would be unconstitutional. Here, however, the adoption of the interpretation of the "possession or enjoyment" provision of the Tax Law, as enunciated in the *Church* case (*supra*) fixes the date of the "complete" transfer contemplated by the Legislature at the moment of death of the grantor of the trust. The grantor having died in the year 1947 the estate tax law is not applied retroactively. In rejecting a like argument advanced in the *Church* case the court said at pages 644–645: "How is it possible to call this trust transfer 'complete' except by invoking a fiction? Church was sole owner of the stocks before the transfer. Probably their greatest property value to Church was his continuing right to get their income. After legal title to the stocks was transferred, somebody still owned a property

right in the stock income. That property right did not pass to the trust beneficiaries when the trust was executed; it remained in Church until he died. He made no ' complete ' gift effective before that date, unless we view the trust transfer as a ' complete ' gift to the trustees. But Church gave the trustees nothing, either partially or completely. He transferred no right to them to get and spend the stock income. And under the teaching of the *Hallock* case, quite in contrast to that of *May* v. *Heiner,* passage of the mere technical legal title to a trustee is not necessarily crucial in determining whether and when a gift becomes ' complete ' for estate tax purposes. Looking to substance and not merely to form, as we must unless we depart from the teaching of *Hallock,* the inescapable fact is that Church retained for himself until death a most valuable property right in these stocks — the right to get and to spend their income.''

It is undisputed that the enactment of the Technical Changes Act has relieved the estate of this decedent from the obligation imposed by the *Church* interpretation (*supra*) to pay a Federal estate tax on the corpus of the trust. The adoption of the *Church* interpretation by this court will, therefore, result in the imposition of a tax by the State of New York upon property which the Federal Government has not taxed. While that result is unfortunate, the explanation lies in the fact that in enacting the Technical Changes Act of 1949 the forgiveness of an estate tax was not regarded by the Congress as being subject to any constitutional or other impediment. In framing legislation similar to that contained in the Technical Changes Act, however, the framers of the State legislation considered the effect of the provisions of section 8 of article VII of the State Constitution, which provides in part as follows: '' money of the state shall not be given or loaned to or in aid of any private corporation or association, or private undertaking ''. (See N. Y. Legis. Ann., 1950, p. 317.) Said section has been consistently construed to forbid any retroactive reduction of tax liability already accrued. (*Matter of Burnham,* 236 N. Y. 608; *Matter of Guiteras,* 122 Misc. 523, affd. 214 App. Div. 722.) An examination of such legislation (L. 1950, ch. 683) and the memoranda submitted to the legislative committee shows that the drafters evidently desired to conform the State law in all respects to the Federal prototype but were restrained from so doing by reason of the aforementioned constitutional prohibition. (N. Y. Legis. Ann., 1950, pp. 316–317.) Under section

249-z of the Tax Law providing that estate taxes are due and payable at the time of the decedent's death, the taxes imposed with respect to the corpus of the trust in question " accrued " at the time of the grantor's death in the year 1947. " The tax (so-called) is the toll or impost appropriated to itself by the state for or in connection with the right of succession to property. It *accrues,* therefore, at the same time that the estate vests, that is upon the death of the decedent." (*Matter of Penfold,* 216 N. Y. 163, 167. Emphasis added.) An amendment to the Tax Law in the year 1950 to cancel an obligation owing to the State which had theretofore accrued would have been tantamount, therefore, to a provision to refund taxes already paid. (See decision of the lower court in *Matter of Guiteras, supra.*)

The appeal is affirmed.

Settle order.